0821

CAROLINA CHEMICALS, INC., Respondent v. SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Richland-Lexington Airport District, Appellants.

(351 S. E. (2d) 575)

Court of Appeals

*Walton J. McLeod, III, General Counsel,* and *Jacquelyn S. Dickman, Asst. Counsel,* Columbia, *for South Carolina Dept. of Health and Environmental Control.*

*Eugene F. Rogers,* Columbia, *for Richland-Lexington Airport Dist.*

*D. Reece Williams* and *Frank R. Ellerbe, III,* Columbia, *for respondent.*

Heard May 27, 1986.

Decided Dec. 1, 1986.

BELL, Judge:

This case arises under the South Carolina Pollution Control Act.[1] In July 1981, the Department of Health and Environmental Control cited Carolina Chemicals, Inc., and the Richland-Lexington Airport District for a violation of Section 48-1-90, Code of Laws of South Carolina, 1976, which prohibits the discharge of wastes into the environment except in compliance with a permit issued by the Department. The Department subsequently issued an administrative order requiring Carolina Chemicals and the Airport District to participate in and fund an investigation to determine the extent to which chemicals and other matter dumped by Carolina Chemicals on the District's property are polluting the environment. Carolina Chemicals sought administrative review of the order, which was ultimately upheld by the Board of Health and Environmental Control. Carolina Chemicals then petitioned for judicial review of the Board's order pursuant to the Administrative Procedures Act.[2] The circuit court held that the Board's order was erroneous as a matter of law and granted the petition. Both the Department and the Airport District appeal. We affirm.

The facts of the case are stipulated. In 1949, Carolina Chemicals moved to property on the perimeter of what is now the Columbia Metropolitan Airport. The principal activity of Carolina Chemicals was blending chemicals purchased from other manufacturers to make agricultural pesticides. The chemicals were contained in paper bags and drum containers which, after being emptied, were discarded.

At the time, there was no regular waste disposal service in the vicinity. However, the Airport permitted waste disposal for some industries and tenants at a dump on its property which the Airport used for its own waste disposal. Carolina Chemicals and the Airport entered into a contractual arrangement which allowed Carolina Chemicals to use the

---

[1] Sections 48-1-10 to -350, Code of Laws of South Carolina, 1976, as amended.

[2] Section 1-23-380(g), Code of Laws of South Carolina, 1976, as amended.

dump for a monthly fee of $25.00. The precise terms of this contract were not introduced into evidence, but it appears the arrangement was a contractual license permitting Carolina Chemicals to dispose of its waste on Airport property.

The Department's hearing officer found that in disposing of the bags and drums at the Airport dump Carolina Chemicals conformed with all laws and regulations in force at the time. In accordance with recommended procedures, Carolina Chemicals burned the containers until sometime in 1960 or 1961, when the Airport requested that burning be discontinued because of visibility problems. Thereafter, the containers were simply discarded at the disposal site. Carolina Chemicals ceased dumping at the Airport site sometime in 1962. However, a substantial number of containers remain on the Airport's property today. They are piled in a mound approximately ten to fourteen feet high and several hundred feet long.

From 1958 to 1962 Carolina Chemicals used DDT, Toxaphene, and Lindane to make pesticides. These chemicals were in widespread use in the 1950's and 1960's and were specifically recommended by governmental agencies and educational institutions for pest control. They have since been found to be harmful to the environment and have been banned from use for most purposes. The bags and drums containing these chemicals were plainly labelled at the time Carolina Chemicals disposed of them, and the hearing officer found it was well known to Airport officials that they contained chemical residues.

Since the time Carolina Chemicals disposed of them, the bags and drums have deteriorated. Chemical residues remaining in them have leached and continue to leach into the soil and groundwater on the Airport's property. This condition prompted the Department to issue the administrative order citing Carolina Chemicals for a violation of Code Section 48-1-90.

I.

The main issue on appeal is whether the Board committed an error of law in concluding that Carolina Chemicals has violated Section 48-1-90. That statute, which became effective on April 29, 1970, provides, in pertinent part:

(a) It shall be unlawful for any person, directly or indirectly, to throw, drain, run, allow to seep or otherwise discharge into the environment of the State organic or inorganic matter, including sewage, industrial wastes and other wastes, except as in compliance with a permit issued by the Department.[3]

It is undisputed that Carolina Chemicals ceased all waste disposal at the Airport site years before the effective date of the Pollution Control Act. The Department argues, however, that a condition of pollution *presently* exists due to continued leaching of chemicals into the groundwater at the site. While this is no doubt true, the mere existence of a condition of pollution does not violate Section 48-1-90. The statute is framed in terms of a "person" who, by act or omission, discharges wastes into the environment in breach of the statutory duty to do so only in compliance with a permit issued by the Department.

It is fundamental that an individual can breach a duty in either of two ways, by performing an affirmative act or, less commonly, by failing to perform some act.

In the present case, there has been no finding that Carolina Chemicals affirmatively breached any duty. At the time it disposed of the containers, Carolina Chemicals complied with the laws and regulations then in force. There is no finding that the disposal constituted a common law nuisance. After the effective date of the Pollution Control Act, Carolina Chemicals disposed of no containers at the Airport site. With respect to the containers it had discarded up to 1962, it has done nothing since the effective date of the Act which would constitute an act in violation of a duty imposed by Section 48-1-90.

The Department maintains that Carolina Chemicals is "allowing" chemical residues "to seep" into the groundwater

---

[3] As originally enacted, this subsection provided:

(a) It shall be unlawful for any person, directly or indirectly, negligently or willfully, to throw, drain, run, allow to seep or otherwise discharge into any of the waters of the State organic or inorganic matter that shall cause or tend to cause a condition of pollution. Act. No. 1157, § 13(a), Acts and Joint Resolutions of the General Assembly of South Carolina, 1970. A 1975 amendment replaced this language with the current version. Act. No. 203, § 6, Acts and Joint Resolutions, 1975.

by its failure to take active steps to prevent further leaching from the containers. As Section 48-1-90 makes it unlawful for "any person ... to ... allow to seep or otherwise discharge into the environment" waste matter, the Department argues, Carolina Chemicals is *presently* violating the statute. This argument, while superficially plausible, goes beyond any sensible reading of the statutory language. If we were to interpret the statute with the same literalmindedness as the Department, all the world would be violating the statute, since no one is taking affirmative steps to stop leaching from the containers. The statute is plainly intended to apply to a narrower class of persons.

The Department overlooks the point that ordinarily the law imposes no duty on a person to act. An affirmative duty exists only if imposed by statute, contract, relationship, status, property interest, or some other special circumstance. To violate the statute by failure to act, a person must have some relationship to the seeping activity at the time of the alleged omission which places on him an affirmative duty.

When Carolina Chemicals discarded its waste on the Airport's land, it plainly intended to abandon any further interest in or control over the containers. It likewise intended to have no further responsibility for the containers, and none was imposed under the contract. Further, Carolina Chemicals acquired no interest under the contract in the real property used for the waste disposal. The Airport retained all the benefits and responsibilities pertaining to the land. Carolina Chemicals merely paid a monthly fee for the right to dispose of its waste on the Airport's property. Thus, Carolina Chemicals has no legal interest in the real property where the disposal site is located, and it has no present legal interest in the discarded containers.

We find nothing in the language of Section 48-1-90 imposing an affirmative legal duty on a past generator of wastes who lawfully disposed of them before the effective date of the Pollution Control Act and has had no further connection with them since. The wording of Section 48-1-90 implies that a person violating the statute is one who, directly or indirectly, controls or has a right to control the discharge. Carolina Chemicals no longer has control over the discarded

containers. Therefore, it is not a person allowing a discharge of wastes into the environment within the meaning of Section 48-1-90. Accordingly, we hold that Carolina Chemicals is not committing a present violation of the statute.

## II.

In the alternative, the Department argues that Carolina Chemicals' *past* conduct in disposing of the containers violates Section 48-1-90. In other words, the Department argues for retroactive application of the statute.

In the construction of statutes there is a presumption that legislative enactments are prospective rather than retroactive in their operation unless there is a specific provision or clear legislative intent to the contrary. *Hyder v. Jones,* 271 S. C. 85, 245 S. E. (2d) 123 (1978). No statute will be applied retroactively unless the result is so clearly compelled as to leave no room for reasonable doubt. *Id.*

The Department concedes this general principal, but argues that the present case falls within the exception that remedial or procedural statutes may be given retroactive application. *See Hercules, Inc. v. South Carolina Tax Commission,* 274 S. C. 137, 262 S. E. (2d) 45 (1980).

The Department contends Section 48-1-90 should be given retroactive application because the conduct of Carolina Chemicals during the period from 1958 to 1962 would have subjected Carolina Chemicals to legal liability when it occurred. Specifically, the Department claims the conduct constituted either a common law nuisance or a violation of Act No. 873, Acts and Joint Resolutions of the General Assembly of South Carolina, 1950. Thus, the Department argues, the Pollution Control Act merely imposes a liability where one already existed and should be considered remedial rather than substantive.

We find the argument unpersuasive for two reasons. First, Carolina Chemicals has never been adjudicated guilty of creating a common law nuisance or of violating Act No. 873 of 1950. Indeed, the Department's own hearing officer determined Carolina Chemicals conformed to then existing statutes and regulations when it disposed of the containers.

Consequently, the factual premise of the Department's argument has not been proven. Second, the administrative order in question cites Carolina Chemicals for a violation of Section 48-1-90, not for nuisance or violation of prior statutory law. The substantive liability created by Section 48-1-90 is different from liability under the common law and prior statutes. It consists of discharging wastes except in compliance with a permit issued by the Department. Liability is strict. A violation is established simply by showing the discharge does not comply with permitting requirements. This liability did not exist in 1962 when Carolina Chemicals last disposed of the containers. The Department cannot prove a violation of Section 48-1-90 by showing there might have been some other and different substantive legal theory on which Carolina Chemicals was liable in 1962. Nor can it hold Carolina Chemicals in violation of a substantive liability which did not exist at the time the containers were discarded.

We have reviewed the authorities from other jurisdictions which the Department and the Airport cite to support retroactive application of Section 48-1-90. Those cases where liability was imposed for the continuing effects of past acts are all clearly distinguishable from the case before us. Some involved the liability of owners and occupiers of land. *See State Department of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 468 A. (2d) 150 (1983); *Philadelphia Chewing Gum Corp. v. Commonwealth Department of Environmental Resources*, 35 Pa. Commw. 443, 387 A. (2d) 142 (1978), *aff'd in part and dismissed in part sub nom. National Wood Preservers, Inc. v. Commonwealth Department of Environmental Control*, 489 Pa. 221, 414 A. (2d) 37 (1980); *Meadowlark Farms, Inc. v. Illinois Pollution Control Board*, 17 Ill. App. (3d) 851, 308 N. E. (2d) 829 (1974); *United States v. South Carolina Recycling and Disposal, Inc.*, 20 Env't Rep. (BNA) 1753 (D.S.C. 1984); *United States v. Price*, 523 F. Supp. 1055 (D.N.J. 1981); *United States v. Solvents Recovery Service of New England*, 496 F. Supp. 1127 (D. Conn. 1980). Others involved continuing conduct after the effective date of the statute in question. *United States v. Price, supra; United States v. Solvents Recovery Service of New England, supra.* In others substantive liability was grounded on com-

mon law nuisance. *State v. Schenectady Chemicals, Inc.*, 103 A.D. (2d) 33, 479 N.Y.S. (2d) 1010 (1984); *United States v. Solvents Recovery Service of New England, supra.* Others involved waste disposal which was unlawful at the time it took place. *Jones v. Inmont Corp.*, 584 F. Supp. 1425 (S.D. Ohio 1984); *United States v. Price, supra.* Several cases involved statutes that expressly provided for retroactive application. *State Department of Environmental Protection v. Ventron Corp., supra; Jones v. Inmont Corp., supra; United States v. South Carolina Recycling and Disposal, Inc., supra.* Others involved statutes which impose a different substantive liability from Section 48-1-90. *Jones v. Inmont Corp., supra; United States v. Diamond Shamrock Corp.*, 12 Envtl. L. Rep. (Envtl. L. Inst.) 20819 (N.D. Ohio 1981); *United States v. Price, supra; United States v. Solvents Recovery Service of New England, supra* (statute applies to conditions not acts; any person "contributing to" condition liable). Because these cases involved different facts and different statutes, they are of limited help in deciding this case.

### III.

The Airport District admits its liability under Section 48-1-90 for allowing chemical residues from the discarded containers to seep into the ground water. However, it maintains it is no more responsible for the problem than Carolina Chemicals, who created the pollution by dumping the containers to start with. Thus, it argues, if Carolina Chemicals is not liable for a violation of Section 48-1-90, then neither is it liable.

This argument ignores the critical fact that the Airport District has present ownership of the land and the present right of disposition and control over the discarded containers while Carolina Chemicals does not. When it agreed by contract to permit the containers to be abandoned on its land, the Airport accepted control over and responsibility for them. Any further disposition of the containers then became the right of the Airport, not Carolina Chemicals. The Airport knew, when it permitted their disposal on its property, that Carolina Chemicals was abandoning any further interest in the containers. The fact that it did not foresee future problems as a result of the dumping is irrelevant.

Because is it committing a present violation of Section 48-1-90 by allowing hazardous wastes to seep from its property without a permit, the statute, as applied to the Airport District operates prospectively, not retroactively. In other words, the Airport District's conduct, unlike that of Carolina Chemicals, is taking place now, after the effective date of the Act, and it is conduct within the clear ambit of the statute. For these reasons, we hold the Airport is liable under Section 48-1-90 regardless of whether the statute applies to Carolina Chemicals.

The difficulty with this case is that neither Carolina Chemicals nor the Airport appear to have violated any statutes or regulations up to the time dumping ceased in 1962. Thus, to impose liability a decade later under a subsequently enacted statute strains the normal principles that civil liability should be based on fault and the defendant should be on fair notice that his conduct violates the law at the time he commits the wrongful act. We have observed in another context that the law should be slow to depart from the fault concept when it imposes civil liability. *See South Carolina Insurance Co. v. James C. Greene & Co.*, 290 S. C. 171, 348 S. E. (2d) 617 (Ct. App. 1986). In this case, however, the Legislature in its wisdom determined there are compelling reasons to impose strict liability for pollution of the environment. Where such "no fault" liability is created after the fact, only the clearest mandate from the Legislature should lead us to apply the statute retroactively. The essential difference between the Airport and Carolina Chemicals is not that one engaged in more culpable conduct than the other, but that one accepted continuing responsibility for the discarded containers whereas the other did not.

We emphasize that our holding rests on the facts of this case and the particular statute invoked by the Department. Our opinion should not be read to suggest there can never be liability for the continuing effects of past conduct under other legal theories or on different facts.

Affirmed.

GARDNER and CURETON, JJ., concur.