0904

James L. SHARPE, as Administrator of the Estate of Bobby Charles Sharpe, Deceased, Appellant v. SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH; Oliver Norman Evans, M.D.; and Patrick H. McDonaugh, M.D., Respondents.

(354 S. E. (2d) 778)

Court of Appeals

*Isadore S. Bernstein,* Columbia, and *Walter G. Metcalfe,* Cayce, *for appellant.*

*Charles E. Carpenter, Jr.,* and *George C. Beighley,* both of *Richardson, Plowden, Grier & Howser, Atty. Gen. T. Travis Medlock,* and *Sr. Asst. Atty. Gen. Edwin E. Evans,* Columbia, *for respondents.*

Heard Jan. 21, 1987.

Decided March 16, 1987.

SHAW, Judge:

In this action for damages based on the alleged wrongful death of his brother, appellant, James L. Sharpe, as Administrator of the Estate of Bobby Charles Sharpe, Deceased, appeals the trial court's judgment for respondents, South Carolina Department of Mental Health; Oliver Norman Evans, M.D.; and Patrick H. McDonaugh, M.D. (hereinafter "defendants"). We affirm.

On April 30, 1979, the deceased, Bobby Sharpe, and a friend, Frank Smith, were working on a car beside the trailer in which William G. Sevits lived. Sevits, after asking the two men to keep the noise down because he had a headache, fired a shotgun from his window killing Sharpe and wounding Smith.

The record reveals Sevits had a history of mental illness and received treatment dating back to 1973. On February 2, 1979, Sevits voluntarily admitted himself to the G. Werber Bryan Psychiatric Hospital which is operated by the South Carolina Department of Mental Health. He was treated and then released on February 23, 1979, after twice requesting discharge. Sevits was advised of his need for outpatient treatment and an appointment was set up for him at the Columbia Area Mental Health Center. He was also given

medication to take through his first scheduled appointment.

Sharpe's complaint alleges the defendants were negligent in the treatment and discharge of Sevits as well as in failing to issue proper warnings to "the community." All parties waived a jury trial. The trial judge found for the defendants and dismissed the action.

Sharpe argues the trial judge erred in (1) excluding the deposition of Sharpe's only expert witness, (2) failing to apply the "common knowledge" exception to the requirement of expert testimony in proving negligence and proximate cause, and (3) holding the defendants had no "affirmative duty to warn of the release of a violent patient in the absence of specific threats of harm to a particular individual. . . ."

## I.

The admission of evidence is discretionary with the trial judge, and this court will not disturb the judge's decision absent a clear showing of an abuse of that discretion, with resulting prejudice to an appellant. *Cudd v. John Hancock Mutual Life Insurance Company*, 279 S. C. 623, 310 S. E. (2d) 830 (Ct. App. 1983).

Sharpe sought to introduce at trial the deposition of ■ Dr. John W. Davis, a psychiatrist. Dr. Davis never treated Sevits and had no personal knowledge of the facts of this case. The defendants objected because Dr. Davis' opinions are not based on any "probable hypothetical question." Sharpe argued a hypothetical question is unnecessary. The trial judge disagreed, ruling an opinion by an expert witness without firsthand knowledge of the facts, must be based on a proper hypothetical question. We agree. This rule was recently reaffirmed by this court in *Logan v. Gatti*, 289 S. C. 546, 347 S. E. (2d) 506 (Ct. App. 1986). We hold the trial judge did not err in excluding the deposition on this ground.[1]

---

[1] Even the use of proper hypothetical questions would not necessarily have made Dr. Davis' testimony admissible. It is not at all clear, as Sharpe contends, that under Rule 87(D)(3), Rules of Practice for the Circuit Courts of South Carolina, a deposition is admissible simply on the basis of the attorney's statement the deposition is absent from the state. *See Stone v. Guaranty Bank & Trust Co.*, 270 S. C. 331, 242 S. E. (2d) 404 (1978).

## II.

Sharpe argues expert scientific knowledge is not necessary to conclude the defendants were negligent and, thus, the trial judge erred in finding such evidence is necessary.

First, we note this position is inconsistent with Sharpe's attorney's arguments at trial:

> ... the only way we can show negligence on the part of ... [the defendants] in the treatment is for an expert to say where did they go wrong in failing to prescribe a certain medication and so forth.

The attorney later, in arguing for a new trial, stated:

> It was essential for proof of our case that we have evidence by a competent psychiatrist, establishing that there were deviations on the part of the defendants here from the standard of proper medical care with respect to patient's evidence.

Second, we hold the proper treatment of a mental patient like Sevits and the standard of care required in deciding to discharge him under a plan of outpatient care is not a matter of common knowledge to the average layman. The application of the common knowledge exception to the requirement of expert testimony in proving negligence depends on the particular facts of a case. We hold it is not proper on these facts.

## III.

The trial judge, in his order, held that South Carolina has not "recognized a general duty to warn of the dangerous propensities of others." We are aware some states have imposed a duty on therapists, based on a therapist-patient relationship, to warn third persons when there is a danger to a specific person from the therapist's patient.[2]

However, this issue is not before us. There was no identifiable threat to Bobby Sharpe on these facts. In fact, the decedent, Bobby Sharpe, did not move into the trailer park where Sevits lived until after the defendants

---

[2] For example, see *Tarasoff v. Regents of University of California* 17 Cal. (3d) 425, 131 Cal. Rptr. 14, 551 P. (2d) 334 (1976).

discharged Sevits. Nothing in the record indicates Sevits and Sharpe knew each other prior to Sevits's discharge.

Sharpe argues the case of *Crowley v. Spivey*, 285 S. C. 397, 329 S. E. (2d) 774 (Ct. App. 1985), imposes a general duty to warn on a physician of a potential danger to the public at large by a patient. We disagree.

In *Crowley*, a couple divorced and the father later obtained custody of the couple's two children from the mother. When the father learned the mother, who had received treatment for paranoid schizophrenia for eight years, had obtained a gun, he informed the mother's parents, the Spiveys, he would no longer permit any visitation outside his home. The Spiveys assured the father they would supervise the care and safety of the children during the mother's visitation with the children in the Spiveys's home. During such a visit the mother shot and killed the two children. This court affirmed jury verdicts for damages in suits brought by the father for the wrongful death of each child. However, the court did not declare a general duty to warn of a danger to unknown third persons based on any special relationship. The court found a duty of care existed in that case "... grounded in the legal proposition that one who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care." We hold it is patent from a reading of the case that *Crowley* does not support Sharpe's argument in this case. The trial judge did not err in finding the defendants had no duty to warn anyone in this case.

Affirmed.

GARDNER, J., concurs.

BELL, J., concurs in a separate opinion.

BELL, Judge, concurring:

I agree the judgment must be affirmed, but for reasons other than those given by the Court.

Sharpe prosecuted his suit on a theory of negligence. A cause of action for negligence arises from the concurrence of three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission, i.e. failure to exercise the care of a

reasonable man in the circumstances; and (3) damage proximately resulting from the breach. *South Carolina Insurance Co. v. James C. Greene & Co.*, 290 S. C. 171, 348 S. E. (2d) 617 (Ct. App. 1986). Whether the defendant is under a legal duty to the plaintiff is a question of law for the court; whether the defendant failed to observe the standard of care required by law in a particular case and whether his conduct proximately caused damage to the plaintiff are questions of fact for the trier of fact. *Rogers v. Atlantic Coast Line Railroad Co.*, 222 S. C. 66, 71 S. E. (2d) 585 (1952); *Kulik v. Public Service Co. of Colorado*, 43 Colo. App. 139, 605 P. (2d) 475 (1979), *aff'd sub nom. Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P. (2d) 313 (Colo. 1980); *Walters v. Kellam & Foley*, 172 Ind. App. 207, 360 N. E. (2d) 199 (1977). In this sense, negligence is a mixed question of law and fact. *Rogers v. Atlantic Coast Line Railroad Co., supra.*

The existence of a duty owed is not incidental to a cause of action for negligence; it is an indispensable element of the plaintiff's case. The question of liability for negligence cannot arise at all until it is established that the one who has been negligent owed some duty to the person who seeks to make him liable for his negligence. *Le Lievre v. Gould*, [1893] 1 Q.B.D. 491 (per Lord Esher, M.R.). "Proof of negligence in the air, so to speak, will not do." *Palsgraf v. Long Island Railroad Co.*, 248 N. Y. 339, 341, 162 N. E. 99, 99 (1928) (quoting Sir Frederick Pollock).

Our own Supreme Court has repeatedly affirmed this rule. In *Kershaw Motor Co. v. Southern Railway Co.*, 136 S. C. 377, 382, 134 S. E. 377, 378 (1926), the Court stated:

> An essential ingredient in any conception of negligence is that it involves the violation of a legal duty, which one person owes to another — the duty to take care for the safety of the person or property of the other; and the converse of the proposition is that, where there is no legal duty to exercise, there can be no actionable negligence. Therefore it is reasoned that a plaintiff, who grounds his action upon the negligence of the defendant, must show, not only that the conduct of the defendant was negligent, but also that it was a violation of some duty which the defendant owed him.

Likewise, in *South Carolina Electric & Gas Co. v. Utilities Construction Co.*, 244 S. C. 79, 88, 135 S. E. (2d) 613, 617 (1964), the Court held:

> The breach of a legal duty is essential to negligence and such legal duty is that which the law requires to be done or forborne with respect to a particular individual or the public at large. Without a violation of such a legal duty, there is no negligence.

*See also Brown V. South Carolina Insurance Co.*, 284 S. C. 47, 324 S. E. (2d) 641 (Ct. App. 1984), *cert. dismissed,* 290 S. C. 154, 348 S. E. (2d) 530 (1986) (negligent conduct becomes actionable only when it violates some specific legal duty owed to the plaintiff); *Chrisley v. United States,* 620 F. Supp. 285 (D.S.C. 1985), *affirmed without published opinion,* 791 F. (2d) 165 (4th Cir. 1986) (where there is no duty owed to the plaintiff, there can be no negligence by the defendant); *Degg v. Midland Railway Co.* (1857) 1 H. & N. 733 (there is no intrinsic negligence; there can be no action except in respect of a duty infringed).

In this case, Sharpe argues the Department of Mental Health was negligent in two particulars: (1) it failed to give Sevits proper medical treatment or aftercare and (2) it failed to warn the public Sevits was in an unstable condition when it released him.[1] To impose liability on either of these theories, Sharpe was required to establish the Department owed him a duty respecting the matters alleged.

Sharpe claims the Department deviated from accepted standards of professional care in treating Sevits for mental illness. But the duty to observe appropriate standards of medical care was a duty owed to Sevits, not a duty owed to Sharpe. Sharpe was a stranger to the treatment process. Sharpe had no relationship with the Department from which a duty to him could arise. His position was no different from that of any member of the general public as far as

---

[1] Originally, Sharpe also alleged negligence by reason of improper discharge from a treatment facility of the Department. The Supreme Court held this claim was barred by Section 44-17-900, Code of Laws of South Carolina, 1976, which grants immunity to those legally participating in the release or discharge of a patient from a mental health facility. *See Sharpe v. South Carolina Department of Mental Health,* 281 S. C. 242, 315 S. E. (2d) 112 (1984).

the Department was concerned. He also had no relationship with Sevits. He moved next door to Sevits *after* Sevits had been treated and discharged. He and Sevits did not know each other at the time Sevits was hospitalized. In these circumstances, even if the Department failed to observe due care in treating Sevits, there was no liability to Sharpe. "To prove negligence it is not enough to shew that the defendant has been negligent to others, the plaintiff must shew that there has been a breach of duty towards himself." *Thomas v. Quartermaine,* (1887) 18 Q.B.D. 685, 698 (per Bowen, L.J.). The plaintiff must sue in his own right for a breach of duty personal to him, and not as the vicarious beneficiary of a breach of duty to another. *Palsgraf v. Long Island Railroad Co., supra.*

Accordingly, I would hold that Sharpe failed to prove liability arising from the Department's alleged negligent treatment of Sevits. Sharpe's theory would overthrow settled doctrine in favor of a rule that one rendering medical services owes a duty of care not only to the patient he treats, but to the whole world. It would make doctors and hospitals liable to the Frank Smiths who happen casually on the scene as well as the Bobby Sharpes who live next door. It would create no end of liability for negligence. Such a rule would be as unwise as it is unprecedented.

Sharpe next argues the Department negligently failed to warn him or the general public that Sevits was unstable at the time of his release.

Ordinarily, the common law imposes no duty on a person to act. *Brown v. South Carolina Insurance Co., supra; Carolina Chemicals, Inc. v. South Carolina Department of Health & Environmental Control,* 290 S. C. 498, 351 S. E. (2d) 575 (Ct. App. 1986). As a rule, an affirmative duty exists in law only if imposed by statute, contract, relationship, status, property interest, or some other special circumstance. *Id.* Therefore, the defendant generally incurs no liability for failure to take positive steps to benefit others or to protect them from harm not created by his own wrongful act. *Carrier v. Riddell, Inc.,* 721 F. (2d) 867 (1st Cir. 1983); *Williams v. State,* 34 Cal. (3d) 18, 192 Cal. Rptr. 233, 664, P. (2d) 137 (1983); Restatement (Second) of Torts § 314 (1965).

Unlike South Carolina, some states have imposed a duty

on therapists to warn third parties when there is a danger to a specific person from the therapist's patient.[2] Even if we were to adopt such a rule, it would not avail Sharpe in this case. There was no threat to Bobby Sharpe as a specific individual at the time Sevits was treated and released. As previously noted, Sharpe moved next door to Sevits after the Department treated and discharged him. Sevits and Sharpe did not know each other prior to Sevits's treatment and discharge. Sevits made no specific threats about Sharpe during the course of his treatment. Thus, there was no basis for the Department to warn Sharpe individually, even if a duty to warn was imposed by law. Counsel has cited no case in which a court has found a duty to warn in the absence of a known danger to a specific individual.[3]

Sharpe, however, also asks us to recognize a legal duty to warn the public at large when a mental patient is released. I agree with the Court that no such duty exists in South Carolina law.[4] Furthermore, I see no principle of the common law which compels us to recognize such a duty.

As a practical matter, there is no effective way to give the public a meaningful warning that a released patient is potentially unstable. A treating facility could, perhaps, place a warning in the "legal notices" section of the newspaper. No doubt, if we recognized a general duty to warn, hospitals and therapists, in order to protect themselves from liability, would adopt a policy of routinely issuing warnings upon the release of every patient. However, this would entail substantial human and economic costs. It would increase the finan-

---

[2] *See, e.g., Tarasoff v. Regents of University of California,* 17 Cal. (3d) 425, 131 Cal. Rptr. 14, 551 P. (2d) 334 (1976).

[3] For cases holding no such duty exists, see *Thompson v. County of Alameda,* 27 Cal. (3d) 741, 167 Cal. Rptr. 70, 614 P. (2d) 728 (1980); *Furr v. Spring Grove State Hospital,* 53 Md. App. 474, 454 A. (2d) 414 (1983); *Cairl v. State,* 323 N. W. (2d) 20 (Minn. 1982).

[4] Contrary to Sharpe's argument, I do not read the Supreme Court's prior opinion in this case as recognizing a duty to warn. The main issue in that appeal was whether the immunity statute, Section 44-17-900, had been impliedly repealed. In discussing Sharpe's other allegations of negligence, the Court simply observed: "[T]he complaint contains allegations which *may* state other grounds for recovery not protected by the provisions of Section 44-17-900." *Sharpe v. South Carolina Department of Mental Health,* 281 S. C. 242, 246, 315 S. E. (2d) 112, 114 (1984) (emphasis added). It seems highly unlikely that the Court, with this tentative remark, intended to announce an important new doctrine of the tort law in South Carolina.

cial and administrative burdens on those rendering treatment; it would create new grounds for legal liability based on the content of the warnings; it would intrude on the patient's privacy; it would often be therapeutically counterproductive; it would publicly stigmatize mental patients and most probably deter them from seeking treatment; it would undermine the policy favoring voluntary rather than involuntary treatment for mental disorders; it would undermine the policy favoring release and reintegration of mental patients into the community; and rather than making the law more simple and more certain, it would create a maze of complex legal questions where none presently exists.

Balanced against these substantial costs are the negligible benefits of the rule. The creation of a duty to warn is unlikely either to alert the public or to prevent tragedies such as Bobby Sharpe's death. Since warnings would be issued routinely to avoid legal liability, the cry "Wolf!" would have no meaningful effect on public awareness or safety.

Sharpe argues that warning the public would allow the police or the family of a mental patient to take preventive measures when he is released. This "Big Brother" approach to the problem is not appealing. The police have neither the competence, the duty, nor the legal authority to supervise aftercare for mental patients. They cannot, as Sharpe suggests, simply enter a patient's home, search it, and confiscate anything that might be potentially dangerous to the patient or third parties. They have no authority to force a person to take his medication or otherwise comply with his treatment regime. Warning the patient's family is no better. In this case, Sevits was thirty-five years old and lived by himself. Members of his family were aware of his mental problems. It is pure conjecture to suppose if they had been warned Sevits was unstable they could have or would have taken any action that would have prevented Bobby Sharpe's death.

Sharpe's death was a terrible misfortune. In law, however, his action lies against the one who inflicted the harm, not against another who failed to prevent it.

In summary, I would hold the Department owed Sharpe no duty with respect to Sevits's treatment and no duty to

warn upon his release. Since a duty owed was essential to Sharpe's cause of action for negligence, the judgment for the defendants should be affirmed. It is unnecessary to address the evidentiary questions raised by the appeal, since Sharpe's case fails as a matter of law.