1282

Vicki H. ROGERS, Executrix of the Estate of Helone C. Harrison, Deceased, Appellant v. SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH; William S. Hall, M.D.; Karl V. Doskocil, M.D.; Alphonso Pasicatan, M.D.; and N. A. Desrosiers, M.D., Respondents.

(377 S. E. (2d) 125)

Court of Appeals

*Hardwick Stuart, Jr.,* and *Theodore Von Keller* of *Adams, Quackenbush, Herring & Stuart,* Columbia, *for appellant.*

*Ernest J. Nauful, Jr.,* and *William H. Davidson, II* of *Nauful & Ellis,* Columbia, *for respondents.*

Heard Dec. 14, 1988.

Decided Jan. 23, 1989.

BELL, Judge:

This is an action for wrongful death. The decedent, Helone C. Harrison, was shot and killed by her sister, Sybil Ann Corley, a former patient of the South Carolina Department of Mental Health. Harrison's personal representative, Vicki Rogers, sued the Department, the Commissioner of Mental Health, the Superintendent of the State Hospital, and two doctors who treated Corley, alleging the doctors negligently failed to warn Harrison that Corley might harm her. Prior to trial, the circuit court dismissed the action as to the Commissioner and the Superintendent. At trial Rogers sought to introduce the testimony of a clinical psychologist to prove the two doctors breached a duty to warn Harrison she was a potential victim of her sister. The judge refused to admit the psychologist's opinion as to the standard of care required of the doctors in this case. Rogers offered no other expert testimony to establish a breach of the professional standard of care. At the close of the evidence, the court granted the defendants' motion for a directed verdict. Rogers appeals. We affirm.

Rogers excepts to the trial judge's rulings on the admission of certain evidence and the manner of examining certain witnesses. We find it unnecessary to reach these issues, because the directed verdict is sustainable, as a matter of law, on a different ground. *See Watkins Motor Lines, Inc. v. Span-America Medical Systems, Inc.*, 296 S. C. 175, 371 S. E. (2d) 2 (Ct. App. 1988) (court may affirm a judgment on any ground appearing in the record).

The material facts are essentially undisputed. Corley has a history of mental illness dating to 1958. She has been admitted to mental hospitals nine times, including the admission to South Carolina State Hospital at issue here. Her medical records reflect a longstanding delusion of persecution by her family, especially her sisters. Over the years, she made repeated claims that the family were trying to kill her, poison her, homosexually abuse her, and the like. She was easily provoked to become combative and destructive. In the

past, she engaged in violent outbursts against family members, although she did not attempt to kill anyone. The family members, including Harrison, were intimately aware of Corley's illness and its manifestations.

As the result of a hostile verbal exchange with one of her sisters, Corley was admitted to the State Hospital on July 3, 1980. Dr. Pasicatan, one of the defendant doctors, treated her while she was there. In January, 1981, she was released to the outpatient care of Dr. Desrosiers, the other defendant doctor. Her diagnosis upon release was paranoid schizophrenia with a guarded prognosis. Rogers alleges Dr. Pasicatan had a duty to warn Harrison of her sister's condition upon release from the hospital.

Corley did well in outpatient care until August, 1982. On August 4th, her paranoid delusional system reappeared and she claimed that her sister Bernice was trying to poison her. Rogers alleges Dr. Desrosiers had a duty to warn Harrison when this relapse occurred.

Corley's condition improved with medication and the doctor noted she was "Better, lots better" on August 9th. On August 19th, while at her sister's house, Corley shot three of her sisters with a handgun, killing Harrison and wounding the other two. She was arrested and committed for psychiatric evaluation. She was found incompetent to stand trial.

Significantly, there is no evidence that Corley directly threatened to harm her sisters, or anyone else, while she was under medical care. Rogers bases her case on the theory that Corley's delusions of persecution by her family were projections of her own murderous feelings toward them, which should have alerted her doctors to a high risk of "lethal action" on her part. In the face of this risk, Rogers argues, the doctors should have warned Harrison that she was endangered.

Rogers' expert witness offered testimony to support this theory as a clinical explanation for Corley's behavior. He also testified that the codes of ethics of the American Psychiatric Association and the American Psychological Association recognize a duty to warn if there is a reasonable probability of risk to a named victim and a warning can be given without violating the patient's civil rights.

Given these facts, the dispositive question is whether the

law placed the doctors under a duty to warn Harrison. Unless a duty was owed in law, none of the defendants is liable for Harrison's death and the particular evidentiary questions raised by the appeal are moot.

In *Sharpe v. South Carolina Department of Mental Health*, 292 S. C. 11, 354 S. E. (2d) 778 (Ct. App. 1987), *cert. dismissed*, 294 S. C. 469, 366 S. E. (2d) 12 (1988), we stated that South Carolina law does not recognize a general duty to warn of the dangerous propensities of others. We noted that some jurisdictions recognize a limited duty of a therapist to warn third persons when there is an apparent danger to a specific person from the therapist's patient. However, we declined to recognize such a rule in *Sharpe* because there was no prior identifiable threat to the victim in that case.

In this case, there is no evidence that Corley made specific threats against Harrison or any other family member while she was being treated by the two doctors. Moreover, the family knew about her mental illness and its manifestations. They knew she could be violent towards them when she was suffering delusions of persecution. Thus, even if we were to recognize a duty to warn when a specific individual is threatened with a known danger, the rule would not apply to these facts. We therefore hold, as a matter of law, that Corley's doctors owed no duty to Harrison in this case. Whether a duty to warn exists when there is an apparent danger to a specific individual who would otherwise be unaware of the potential harm we do not decide, since that case is not before us.

Our disposition of the appeal makes it unnecessary to reach the appellant's specific exceptions, since they are all based on the assumption that the doctors were under a duty to warn Harrison. In particular, we note that the controversy over the admission of the psychologist's testimony is beside the point, because the existence of a duty to warn is a question of law for the court, not a matter of opinion testimony from witnesses.

Affirmed.

SHAW and CURETON, JJ., concur.