24350

Bobby L. ROGERS, Executor of the Estate of Doris Rogers, Respondent v. SOUTH CAROLINA DEPARTMENT OF PAROLE AND COMMUNITY CORRECTIONS, South Carolina State Board of Parole and Community Corrections, South Carolina Department of Corrections, and South Carolina State Board of Corrections, Appellants.

(464 S.E. (2d) 330)

Supreme Court

ALEXANDER S. MACAULAY, Acting Associate Justice, dissented and filed opinion.

*William H. Davidson, II, David L. Morrison,* and *Andrew F. Lindemann,* all of *Ellis, Lawhorne, Davidson and Sims, P.A.,* Columbia, *for appellants.*

*J. Michael Baxley, Martin S. Driggers,* and *W. Carole Holloway,* all of *Driggers & Baxley,* Hartsville, *for respondent.*

Heard Mar. 8, 1995.

Decided Nov. 27, 1995.

MOORE, Justice:

This is a wrongful death action in which respondent obtained a jury verdict in the amount of $600,000. We reverse.

## FACTS

In 1985, Doris Rogers (Doris) was robbed, kidnapped, and murdered. Her assailants were Daniel Jones and Robert Vandroff (Vandroff). Seventeen days prior to Doris's murder, appellants released Vandroff pursuant to a supervised furlough program provided for in S.C. Code Ann. §§ 24-13-710 and -720.[1] Vandroff had been serving time for breaking into the

---

[1] These statutes have since been amended several times. Currently, § 24-13-710 requires the Department of Corrections to notify victims pur-

home occupied by Doris and her son (respondent).

In 1989, respondent brought this action for wrongful death claiming appellants were negligent in failing to warn Doris of Vandroff's release on furlough.[2] At trial, the jury returned a verdict for respondent in the amount of $600,000.[3]

## ISSUE

Did the trial judge err in denying appellants' motion for a directed verdict?

## DISCUSSION

At trial, appellants moved for a directed verdict on the ground that a common law duty to warn of the release of an individual from custody does not exist in this state and that even if such a duty does exist, they did not have a duty to warn Doris in this case. On appeal, appellants argue the trial judge erred in denying their directed verdict motion. We agree.

An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without such a duty, there can be no actionable negligence. *South Carolina Elec. & Gas Co. v. Utilities Constr. Co.*, 244 S.C. 79, 135 S.E. (2d) 613 (1964); *Kershaw Motor Co. v. Southern Ry. Co.*, 136 S.C. 377, 134 S.E. 377 (1926).

Generally, one has no duty to control the dangerous conduct of another or to warn a potential victim of such conduct. *See Degenhart v. Knights of Columbus*, 309 S.C. 114, 420 S.E. (2d) 495 (1992); *Rayfield v. South Carolina*

suant to the provisions of the Victim's and Witness's Bill of Rights, S.C. Code Ann. §§ 16-3-1510 to -1560 (1985 & Supp. 1994), before releasing an inmate through any supervised furlough program. S.C. Code Ann. § 24-13-710 (Supp. 1994). The statute in effect when Vandroff was released did not contain such a notification provision. *See* Act No. 96, § 1, 1983 S. Ct. Acts 199.

[2] Respondent also claimed appellants were negligent in making the decision to release Vandroff on furlough and in supervising Vandroff after his release. Appellants' motion for summary judgment was granted as to these claims and no appeal was taken.

[3] This action arose before the adoption of the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 to -190 (Supp. 1994), but after this Court's decision in *McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985), abrogating sovereign immunity for governmental entities to the extent of any existing tort liability insurance coverage.

*Dep't of Corrections,* 297 S.C. 95, 374 S.E. (2d) 910 (Ct. App. 1988), *cert. denied,* 298 S.C. 204, 379 S.E. (2d) 133 (1989); Restatement (Second) of Torts §§ 314 and 315 (1965). However, when a defendant has the ability to monitor, supervise, and control an individual's conduct, a special relationship exists between the defendant and the individual, and the defendant may have a common law duty to warn potential victims of the individual's dangerous conduct. *See Rayfield v. South Carolina Dep't of Corrections, supra;* Restatement (Second) of Torts §§ 315 and 319 (1965).

We hold such a duty to warn arises when a person being released from custody has made a specific threat of harm directed at a specific individual. *See Sheerin v. State,* 434 N.W. (2d) 633 (Iowa 1989) (the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim); *Cairl v. State,* 323 N.W. (2d) 20 (Minn. 1982) (a duty to warn exists only when specific threats are made against specific victims); *Thompson v. County of Alameda,* 27 Cal. (3d) 741, 167 Cal. Rptr. 70, 164 P. (2d) 728 (1980) (defendants had no affirmative duty to warn of the release of an inmate who had made nonspecific threats of harm directed at nonspecific victims).

In this case, however, there was no evidence presented that Vandroff ever made a specific threat to harm Doris. Therefore, appellants had no common law duty to warn Doris of Vandroff's release. Consequently, the trial judge erred in denying appellants' motion for a directed verdict. *Carolina Home Builders, Inc. v. Armstrong Furnace Co.,* 259 S.C. 346, 191 S.E. (2d) 774 (1972) (when evidence presented at trial raises no issue for the jury as to defendant's liability, a motion for a directed verdict based on the sufficiency of the evidence should be granted); *South Carolina Elec. & Gas Co. v. Utilities Constr. Co., supra; Kershaw Motor Co. v. Southern Ry. Co., supra.* We need not address the remaining issues.

Reversed.

FINNEY, C.J., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.

TOAL, A.J., dissents in separate opinion. ALEXANDER S.

MACAULEY, Acting Associate Justice, concurs with dissent in separate opinion.

TOAL, Justice, dissenting:

I respectfully dissent. I agree with the majority's holding that when a defendant has the ability to monitor, supervise and control an individual's conduct, a special relationship exists between the defendant and the individual such that the defendant under certain circumstances has a common law duty to warn potential victims of the individual's dangerous conduct. I further agree that this duty to warn arises only when defendant has knowledge that a specific individual poses a threat to a specific victim. Where I part company with the majority is with its overly restrictive holding regarding how the defendant custodian acquires knowledge of the individual's threat to a specific victim. The majority holds that a defendant custodian of a dangerous individual only has a duty when the dangerous individual has made a specific theat against a potential victim. Under the majority's holding, if the dangerous individual's conduct indicates his intent to harm a potential victim, but the individual in custody has not specifically verbalized or written the threat, the custodian has no duty to warn the potential victim. This restrictive holding defies logic as well as common sense. Quite often, an individual's threat to another is made known by violent acts or attempted violent acts, not by words. Many dangerous individuals in custody are incapable of verbalizing a threat but very capable of carrying out the threat. I would hold that a common law duty exists when the individual has made a specific threat of harm directed at the potential victim or when the *individual's conduct* indicates an intent to harm the potential victim. I would hold therefore, that whether or not Vandroff's prior course of conduct indicated an intent to harm the victim was a question of fact for the jury to decide.

The following evidence was presented at trial. In 1980, Vandroff was sentenced to seven years for house breaking and larceny of the victim's home. Vandroff admitted to breaking into the victim's home three times before he was apprehended. All persons the parole board contacted when considering Vandroff's parole, including the judge, solicitor, parole officer, and victim's son, stated they did not think parole was

appropriate. In spite of this testimony, he was paroled in 1982. Within two months, Vandroff stole a car and was back in jail. Prison records reveal he has a fourth grade education, is mentally retarded and mentally ill. The parole officer recommended against Vandroff's release a second time. The only persons who recommended parole were Vandroff's father and Mr. Cox, Vandroff's father's employer. All other persons who testified to the parole board, including the sheriff, recommended against parole. Prison officials knew that when Vandroff was on parole he lived with his father, about 500 yards from the victim. Because the defendant parole board's own rating indicated that Vandroff's furlough was high risk, he was placed on high security furlough. The victim was not notified of his release.

In my opinion, viewing the evidence in the light most favorable to the respondent, there was evidence that Vandroff's prior course of conduct indicated to defendants an intent on his part to physically harm Doris after his release from prison. Accordingly, the trial judge properly sent this issue to the jury. *See Hollins v. Richland County School District,* 310 S.C. 486, 427 S.E. (2d) 654 (1993) (when the evidence of gross negligence is susceptible to more than one inference, whether defendant exercised slight care was question for the jury); *Moore v. Levitre,* 294 S.C. 453, 365 S.E. (2d) 730 (1988) (if the evidence supports more than one reasonable inference with respect to a claim or defense, the judge must submit the case to the jury); *Lundy v. Southern Bell Telephone and Telegraph,* 90 S.C. 25, 72 S.E. 558 (1911) (what constitutes negligence is a question of law for the court, but whether negligence in fact exists in a particular case is a question of fact for the jury). In my view, the trial judge in this case properly submitted the issue of defendants liability to the jury. I would AFFIRM.

ALEXANDER S. MACAULAY, Acting Associate Justice, concurring and dissenting:

I concur with Justice Toal, and respectfully dissent. Inasmuch as there is "a duty to warn . . . when a person being released from custody has made a specific threat of harm directed at a specific individual," as held by the majority, I agree that there was sufficient evidence to submit the case to the jury.

This was not a case where the victim was not known to the perpetrator, *Sharpe v. S.C. Dept. of Mental Health*, 292 S.C. 11, 354 S.E. (2d) 78 (Ct. App. 1987). In this case there was evidence that Vandroff had made specific threats of harm against Doris, housebreaking and larceny of her home, which was why he had been incarcerated. *See Rayfield v. S.C. Dept. of Corrections*, 297 S.C. 95, 374 S.E. (2d) 910 (Ct. App. 1988), *cert. denied*, 298 S.C. 204, 379 S.E. (2d) 133 (1989). It makes no difference whether the home was owned by Doris or the Respondent individually, housebreaking is a crime against possession rather than property. *State v. Miller*, 225 S.C. 21, 80 S.E. (2d) 354 (1954).

There having been a specific threat, a manifested propensity to violate the sanctity of one's home, *State v. Brooks*, 277 S.C. 111, 283 S.E. (2d) 830 (1981), directed at a specific individual, Doris and her family, *Rogers v. S.C. Dept. of Mental Health*, 297 S.C. 363, 377 S.E. (2d) 125 (Ct. App. 1989), the existence of the legal duty of care was established in this case; and it then became questions of fact for the trier of fact to determine "whether the defendant failed to observe the standard of care required by law" and "whether [the] conduct proximately caused damage to the plaintiff." *Sharpe v. S.C. Dept. of Mental Health, supra*, 354 S.E. (2d) at 781 (Bell, J., concurring).

I would affirm.