2514

James GILMER, both personally and as Personal Representative of the Estate of Mallie S. Gilmer, Appellant v. John W. MARTIN, M.D., Respondent.

(473 S.E. (2d) 812)

Court of Appeals

*J. Stephen Welch,* of *Welch & Crain,* Greenwood, *for appellant.*

*John L. Choate* and *Allan Levin,* both of *Cozen & O'Connor,* Columbia, *for respondent.*

Heard Apr. 3, 1996.

Decided May 28, 1996; Reh. Den. Aug. 22, 1996.

HEARN, Judge:

James Gilmer, personally and as personal representative of the estate of Mallie S. Gilmer, sued John W. Martin, M.D., for damages caused when one of Martin's psychiatric patients killed the decedent. Gilmer based his claim on Martin's failure

to warn the patient's employer, the nursing home where the decedent resided, that the patient was dangerous and posed a threat of harm to patients at the nursing home. The circuit court judge granted summary judgment for Martin, finding no duty to warn existed, and Gilmer appeals. We affirm.

Summary judgment is appropriate where it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kreutner v. David,* — S.C. —, 465 S.E. (2d) 88 (1995). In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the nonmoving party. *Cafe Associates, Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E. (2d) 162 (1991).

Viewed most favorably for Gilmer the facts of this case are tragic. Debra Ann Pickens was an employee of the Latham Nursing Home in Anderson, South Carolina. Martin, a psychiatrist, treated Pickens since 1985 for anxiety and depression. Martin was aware Pickens was a nurse's aide at the nursing home and occasionally was left alone with elderly, defenseless patients. Martin also knew of at least two and possibly three suicide attempts by Pickens while under his care. However, Pickens never overtly threatened any single individual or any identifiable group of people.

In November 1990, Martin hospitalized Pickens for almost one week for her mental problems. Martin treated Pickens for a "conversion reaction" in late November 1990. He wrote her an excuse to allow her to remain out of work from November 26, 1990 through December 28, 1990, because of her mental status. Martin then placed Pickens in a "survivor's group" under the care of Dr. Harry Diamant, a nonphysician counselor employed by Martin. The group offered counseling for victims of rape. It is not clear whether Pickens actually had been raped or was simply delusional as to whether a rape had taken place. Martin did not personally examine Pickens prior to allowing her to go back to her job at the nursing home. He continued to treat Pickens but asked her no questions to determine if she was having audio or visual hallucinations. Martin was also aware Pickens attempted suicide at the nursing home while on duty in January 1991.

Martin did not notify the nursing home of the true status of Pickens's mental state, nor did he take steps to personally ex-

amine Pickens after she returned to work following her month of "medical leave" for mental problems. On February 18, 1991, Pickens set a series of fires by igniting the rayon drawstring hanging from neon light fixtures over the heads of several patients. The decedent was fatally burned and several other patients were injured. As a result, James Gilmer filed wrongful death and survival actions against Martin, claiming negligence in failing to warn of the danger Pickens posed to patients at the nursing home.

South Carolina does not recognize a general duty to warn of the dangerous propensities of others. *Sharpe v. South Carolina Dep't of Mental Health*, 292 S.C. 11, 354 S.E. (2d) 778 (Ct. App. 1987), *cert. dismissed*, 294 S.C. 469, 366 S.E. (2d) 12 (1988); *Rogers v. South Carolina Dep't of Mental Health*, 297 S.C. 363, 377 S.E. (2d) 125 (Ct. App. 1989). "However, when a defendant has the ability to monitor, supervise, and control an individual's conduct, a special relationship exists between the defendant and the individual, and the defendant may have a common law duty to warn potential victims of the individual's dangerous conduct." *Rogers v. South Carolina Department of Parole and Community Corrections*, — S.C. —, 464 S.E. (2d) 330 (1995) (Toal, A.J. and Macaulay, A.A.J. dissenting). Such a duty to warn arises when a person being released from custody has made a specific threat of harm directed at a specific individual. *Id.*

In *Rogers v. South Carolina Department of Parole and Community Corrections*, Rogers obtained a verdict in a wrongful death case against the Department after his mother, Doris, was robbed, kidnapped, and murdered by a furloughed inmate. The inmate was serving time for previous break-ins at Doris's home. Rogers' theory was negligence for failing to warn the inmate's release on furlough. The Supreme Court reversed based upon a lack of evidence the inmate made a specific threat to harm Doris. Hence, it is not simply foreseeability of the victim which gives rise to a person's liability for failure to warn; rather, it is the person's awareness of a distinct, specific, overt threat of harm which the individual makes towards a particular victim.

Gilmer concedes Martin "did not know of a specific threat against Mallie S. Gilmer individually," but claims there should be a duty to warn all "foreseeable" victims, such as in this

case, where an identifiable threat exists to a specific, small group of individuals. Gilmer in essence requests this Court to adopt a rule of liability for the same generalized threat of harm already rejected by our Supreme Court. This we cannot do. We are bound by the decisions of the Supreme Court. S.C. Const. art. V, § 9 (the decisions of the Supreme Court shall bind the Court of Appeals); *cf. Balloon Plantation, Inc. v. Head Balloons, Inc.*, 303 S.C. 152, 399 S.E. (2d) 439 (Ct. App. 1990) (the Court of Appeals will not dismiss on the same ground upon which the Supreme Court denied a motion to dismiss).

Moreover, the facts of *Rogers* are even more compelling than those presented here since in *Rogers* the perpetrator had a prior history of criminal conduct toward the victim. In this case it is undisputed that Pickens never made a specific threat of harm to any individual other than herself. Consistent with the principles of *Rogers*, the trial judge correctly granted summary judgment.

For the reasons stated, the judgment is

Affirmed.

CURETON and CONNOR, JJ., concur.