502 S.E.2d 78

**Brenda D. BISHOP, as Guardian ad Litem for Bobbi Hatley Robertson, Petitioner,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH, Respondent.**

No. 24799.

Supreme Court of South Carolina.

Heard Dec. 4, 1997.

Decided June 8, 1998.

Rehearing Denied July 17, 1998.

82

H.W. Pat Paschal, Jr., of Miller & Paschal, Greenville, for petitioner.

Ashby W. Davis, Steven A. Snyder, and Gregory A. Morton, all of Donnan, Morton, Davis & Snyder, P.A., Greenville, for respondent.

BURNETT, Justice:

This Court granted certiorari to review the Court of Appeals' opinion in *Bishop v. South Carolina Department of Mental Health*, 323 S.C. 158, 473 S.E.2d 814 (Ct.App.1996). We affirm as modified.

### *FACTS*

On March 1, 1990, Petitioner Brenda Bishop (grandmother) signed an affidavit which led to the involuntary commitment of her daughter, Tammi Lee Hatley (mother), to Respondent South Carolina Department of Mental Health (Department)

for mental illness. Specifically, grandmother alleged mother had made threats against Bobbi Hatley Robertson (victim), mother's three-year-old daughter. At the time, grandmother had legal custody of victim.

Mother was lawfully committed to the Patrick B. Harris Psychiatric Hospital where she was examined by a physician, observed by nurses, and interviewed by a social worker. Two designated examiners examined mother and determined she was not mentally ill. Consequently, on March 2, 1990, mother was released pursuant to an order of the probate court.

On March 3, 1990, mother appeared at the home of grandmother. Grandmother allowed mother to enter the home and grandmother, mother and victim spent several hours visiting together. Grandmother then acquiesced to mother's request to allow her to have custody of victim for a specific period of time. Thereafter, victim left with mother.

After mother returned victim to grandmother a few hours later, grandmother noticed victim had green felt tip magic markings on her arms and body, including her abdominal and vaginal areas. Victim was examined by a physician at Greenville Memorial Hospital; no evidence of penetration or other trauma was found.

Grandmother brought this action on behalf of victim against the Department for the physical abuse of victim allegedly received at the hands of mother. Specifically, grandmother alleged the Department was negligent in releasing mother, in failing to warn of her release, and in failing to properly diagnose and treat mother for those illnesses which caused her to have dangerous propensities towards victim.

The circuit court granted summary judgment in favor of the Department. The court held the Department was not civilly liable pursuant to the provisions of S.C.Code Ann. §§ 15–78–60 (Supp.1997) and 44–17–900 (1976) for releasing mother.[1] The court concluded the Department had no duty to warn grandmother of mother's release. The court found grandmother was well aware of mother's alleged threats at the time she permitted mother to take victim for visitation. Finally, the circuit court held any duty of the Department regarding

---

1. This issue is not before this Court.

the diagnosis and treatment of mother was owed to mother and not to third parties.

On appeal, grandmother argued the circuit court erred in granting summary judgment on victim's negligence claims against the Department based on its findings that the Department did not owe a duty to warn victim of mother's release and that the Department did not owe any duty of care to victim regarding mother's treatment. The Court of Appeals disagreed and affirmed the circuit court's grant of summary judgment. *Bishop, supra.*

The Court of Appeals found the evidence established mother did not make a specific threat of harm to victim while in the Department's custody and, therefore, the Department had no duty to warn of her release. The Court of Appeals noted grandmother, victim's guardian, was obviously aware of mother's release when she appeared at her home and grandmother was aware of mother's threats to harm victim, yet grandmother allowed mother to take victim from her home for an unsupervised visit. With regard to the Department's duty to properly diagnose and treat mother, the Court of Appeals held the Department owed this duty to mother and not victim. *Id.*

## ISSUES

I. Did the Court of Appeals err in affirming the circuit court's grant of summary judgment on the basis that the Department owed no duty to warn victim of mother's release?

II. Did the Court of Appeals err in holding the Department did not owe a duty of care to victim to properly diagnose and treat mother; instead, this duty of care was only owed to mother?

## DISCUSSION

### Standard of Review

Summary judgment is appropriate where it is clear there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Hamiter v. Retirement Division of South Carolina Budget and Control Board,* 326 S.C. 93, 484 S.E.2d 586 (1997). In determining

whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.*

## I.

Grandmother argues the Court of Appeals erred in affirming the grant of summary judgment to the Department because the Department had a common law duty to warn victim of mother's release since victim was a known potential victim of mother. Specifically, grandmother contends the Court of Appeals erred in finding because no express specific threat of harm was made by mother against victim while in the custody of the Department, the Department had no duty to warn victim. According to grandmother, the Department knew mother had made specific threats against victim; therefore, it had a duty to warn victim upon mother's release.

An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence. *Rogers v. S.C. Dep't of Parole & Community Corrections,* 320 S.C. 253, 464 S.E.2d 330 (1995).

South Carolina law does not recognize a general duty to warn of the dangerous propensities of others. *Rogers, supra; Sharpe v. S.C. Dep't of Mental Health,* 292 S.C. 11, 354 S.E.2d 778 (Ct.App.1987), *cert. dismissed,* 294 S.C. 469, 366 S.E.2d 12 (1988). However, when a defendant has the ability to monitor, supervise, and control an individual's conduct, a special relationship exists between the defendant and the individual, and the defendant may have a common law duty to warn potential victims of the individual's dangerous conduct. *Rogers, supra* (citing Restatement (Second) of Torts §§ 315 & 319). This duty to warn arises when the individual has made a specific threat of harm directed at a specific individual. *Id.*

The seminal case on the liability of one treating a mentally afflicted patient for failure to warn or protect third persons threatened by a patient is *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). In *Tarasoff,* the court permitted the plaintiffs to

amend their complaints to state a cause of action against the therapists by asserting that the therapists in fact determined that their patient presented a serious danger of violence to the decedent, or pursuant to the standards of their profession should have so determined, but nevertheless failed to exercise reasonable care to protect decedent from that danger. The patient, a voluntary out-patient, informed his therapist that he was going to kill a girl, unnamed yet readily identifiable as the decedent, when she returned from Brazil. No one warned the decedent of her peril. Shortly after decedent returned from Brazil, the patient killed her. According to the court,

> When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.

*Id.* at 20, 551 P.2d at 340. The court, citing Restatement (Second) of Torts §§ 315–320 to support its position, stated when the defendant stands in some special relationship to the person whose conduct needs to be controlled, a duty of care may be imposed upon the defendant to protect threatened third parties from harm. The court then found a special relationship between the patient and therapists which would give rise to this duty to protect a threatened third person from harm. *Id.*

■ Here, the Department had a special relationship with mother because the Department had custody and control of mother. Thus, if the Department knew or should have known a specific threat was made by mother, the Department had a duty to warn the threatened third party of mother's release.

■ In our opinion the Court of Appeals' interpretation of *Rogers* requiring the threat to be made while in the custody of defendant is too narrow. While cases following *Tarasoff* have made clear that this duty is only owed when a patient specifi-

cally threatens a readily identifiable third party, none of these cases limit liability by requiring the threat to be made while under the control of or in the custody of the defendant. *Rogers, supra; Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980); *Cairl v. State,* 323 N.W.2d 20 (Minn.1982). Instead, all that is required is the defendant be aware or should have been aware of the specific threat made by the patient to harm a specific person. *See Jablonski v. United States,* 712 F.2d 391 (9th Cir.1983) (patient's previous history indicated he would direct his violence against victim).

■ Although the Department's discharge summary stated mother related to the examiners she had no intention of hurting herself or her family and mother did not make a specific threat of harm to her child while in the Department's custody, the Department was aware mother had made specific threats to harm victim in the past. These threats were noted on the documents admitting mother into the custody of the Department. This knowledge was sufficient to trigger the Department's duty to warn victim of mother's release because a specific threat had been made by mother to harm a specific person.

■ However, we affirm the grant of summary judgment in favor of the Department. Even though the Department failed to warn of mother's release thus breaching its duty to warn, its breach of this duty was not a proximate cause of the harm suffered by victim.

■ To establish a cause of action in negligence, three essential elements must be proven: (1) duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292 (1996). Negligence is not actionable unless it is a proximate cause of the injury. *Hanselmann v. McCardle,* 275 S.C. 46, 267 S.E.2d 531 (1980). Proximate cause requires proof of both causation in fact and legal cause. *Oliver v. S.C. Dep't of Highways and Public Transportation,* 309 S.C. 313, 422 S.E.2d 128 (1992). Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. *Id.* Legal cause is

proved by establishing foreseeability. *Oliver, supra; Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994). Foreseeability is determined by looking to the natural and probable consequences of the complained of act. *Koester, supra.* The defendant's negligence does not have to be the sole proximate cause of the plaintiffs injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury. *Hughes v. Children's Clinic, P.A.,* 269 S.C. 389, 237 S.E.2d 753 (1977).

The intervening negligence of a third person will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. *Locklear v. Southeastern Stages,* 193 S.C. 309, 8 S.E.2d 321 (1940). The test by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent conduct of another is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in light of the attendant circumstances. *Oliver, supra; Locklear, supra.*

It is generally for the jury to determine whether the defendant's negligence was a concurring proximate cause of the plaintiff's injuries. *Id.* Only when the evidence is susceptible of only one inference does proximate cause become a matter of law for the court. *Oliver, supra.*

The evidence in the record includes a report written by the emergency trauma center social worker stating the "[c]hild visited with mother earlier today." Further, the trial judge made extensive findings in his order based on the evidence introduced at the summary judgment hearing that grandmother allowed mother to enter the home; grandmother, mother and victim visited for several hours in the home; and grandmother agreed to allow mother to have unsupervised custody of victim for a specific period of time.[2]

---

2. Because we find the facts are sufficiently developed in the record with regard to grandmother's intervening negligence, we affirm on this

■■■ Grandmother was well aware that mother had made threats against victim.[3] When mother appeared at grandmother's house three days after her commitment, grandmother became aware mother had been released from the Department. Grandmother allowed mother to enter her home, and after spending several hours visiting with mother, grandmother allowed mother to take victim from the home for an unsupervised visit. Grandmother had ample knowledge, without the Department's warning, to make an informed decision about whether to allow victim to visit with mother unsupervised. Grandmother made no allegation that she was alarmed or felt threatened when mother entered the house or when mother asked to visit with the child alone. Further, grandmother did not allege that she attempted to contact any authorities concerning mother's release when mother appeared at her residence. Thus, grandmother was negligent in allowing victim to leave with mother.

We find, as a matter of law, the Department could not reasonably foresee grandmother would allow mother to visit with victim unsupervised since only three days earlier grandmother had mother involuntarily committed because mother was threatening to harm victim. The evidence is susceptible of only this inference.[4] Consequently, grandmother's intervening negligence supersedes the Department's negligence for failing to warn of mother's release and the Department will

---

ground even though the trial judge made no specific ruling on this issue in his order. *See* Rule 220(c), SCACR.

**3.** Grandmother claims because the duty to warn was owed to victim, the grandmother's knowledge of mother's threats was insufficient. The focus should be on what victim knew. We disagree. Grandmother was the legal guardian of victim and as such she was responsible for making decisions to ensure victim's safety. Victim was too young to make these decisions for herself; therefore, it is the grandmother's knowledge that is important. *See Tarasoff, supra* (duty to warn victim *or person who would apprise victim of danger*).

**4.** We disagree with the dissent's finding that the evidence is susceptible to at least two other reasonable inferences. The dissent is speculating as to possible motivations to explain grandmother's actions. However, the motivation for grandmother's actions are irrelevant. Instead, application of intervening negligence arises from grandmother's conduct and grandmother's assumed motivations do not displace her conduct.

not be held liable for its negligence because its negligence was not a proximate cause of victim's harm.

## II.

■ Grandmother contends the Court of Appeals erred in affirming the grant of summary judgment to the Department on the issue of alleged negligence in the diagnosis and treatment of mother because the minor child was a foreseeable plaintiff within the scope of danger and the Department owed a duty of care to victim. We disagree.

■ In South Carolina, a malpractice claim can only be maintained by the patient. If a physician deviated from accepted standards of professional care in treating a patient, he breached a duty of care to the patient and not a third party. *Sharpe v. S.C. Dep't of Mental Health*, 292 S.C. 11, 354 S.E.2d 778 (Ct.App.1987) (concurring opinion of Bell, J.), *cert. dismissed*, 294 S.C. 469, 366 S.E.2d 12 (1988) (duty of care owed to patient and not third parties). Other jurisdictions agree with this requirement and do not allow injured third parties to recover. *See Moye v. United States*, 735 F.Supp. 179 (E.D.N.C.1990) (there must be a physician-patient relationship between victim and doctor before the court will find a doctor owes a victim harmed by his patient a duty of care to properly evaluate and treat patient); *Russell v. Adams*, 125 N.C.App. 637, 482 S.E.2d 30 (1997) (psychologists, like other health care providers, may be held liable in medical malpractice only to their patients).

However, some jurisdictions allow third parties to recover for a physician's malpractice under certain circumstances. *See Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980) (because a negligent misdiagnosis of a communicable disease may foreseeably cause injury to close members of patient's family, the physician's duty of care extends to them); *Hofmann v. Blackmon*, 241 So.2d 752 (Fla.App.1970) (a doctor is liable to persons infected by his patient if he negligently fails to diagnose a contagious disease); *Wojcik v. Aluminum Co. of America*, 18 Misc.2d 740, 183 N.Y.S.2d 351 (N.Y.Sup.1959) (doctor is liable for failing to warn patient's family of patient's contagious disease).

The physician-patient relationship is not a requisite in every legal action against a medical provider. A reasonably foreseeable third party, who is harmed by a physician's malpractice in treating a patient, may initiate an action against a physician for malpractice under limited circumstances. *See Molien v. Kaiser Foundation Hospitals, supra; Hofmann v. Blackmon, supra; Wojcik v. Aluminum Co. of America, supra.* However, in the matter *sub judice,* the Department did not owe victim a duty to properly diagnose and treat mother. This duty was owed only to mother.

**AFFIRMED AS MODIFIED.**

FINNEY, C.J., and MOORE, J., concur.

TOAL and WALLER, JJ., dissenting in separate opinion.

TOAL, Justice:

I respectfully dissent, believing that this case ought to be reversed.

Essentially, the majority finds that the trial court and the Court of Appeals committed error granting summary judgment on a finding that the Department of Mental Health had no duty to warn grandmother that it was releasing mother. The majority rightly concludes that the Department had specific knowledge that mother was a threat to grandmother. Further, the majority finds that the Court of Appeals erred in interpreting *Rogers v. South Carolina Department of Parole & Community Corrections,* 320 S.C. 253, 464 S.E.2d 330 (1995) to require a specific threat made while mother was in custody. Nevertheless, the majority upholds, on the ground of intervening negligence of grandmother, the Court of Appeals' affirmance of the trial court's grant of summary judgment.

It is improper for the majority to base its holding on intervening negligence inasmuch as this issue is procedurally barred. In fact, a double preservation sin is being committed here. First, the issue of intervening negligence was not raised to, or addressed by, the trial court. *See Medlin v. South Carolina Farm Bureau Mut. Ins. Co.,* 325 S.C. 195, 480 S.E.2d 739 (1997) (Issue not ruled upon by the trial court is procedurally barred.). Second, the issue was never raised to,

or briefed for, this Court. *See State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981) (An issue not argued in the appellant's brief is deemed abandoned.). Certainly, under Rule 220(c), SCACR, the appellate court may affirm any ruling, order, or judgment upon any ground appearing in the record on appeal. However, here we do not have any ground in the record to justify affirmance. The issue has not been raised legally, nor has it really been developed factually. If there has not been factual development about grandmother's negligence, on what basis can this Court affirm? To make a factual determination, there must be facts before us. To suggest that we may affirm on the basis of the mere allegations of the parties is to impermissibly expand the scope of Rule 220(c). With its decision, the majority has, in effect, changed Rule 220(c) from affirmance on the basis of "any" ground in the record, to affirmance on the basis of "no" ground in the record.

However, even if we assume that this Court may properly reach the issue of intervening negligence, it is improper for us to rule upon the issue as a matter of law because it is quintessentially a question of fact. *See Dixon v. Besco Engineering, Inc.,* 320 S.C. 174, 463 S.E.2d 636 (Ct.App.1995) (Whether an intervening act breaks the causal connection is a question for the fact-finder.); *Small v. Pioneer Machinery, Inc.,* 316 S.C. 479, 450 S.E.2d 609 (Ct.App.1994) (The defenses of contributory negligence and assumption of risk ordinarily present questions of fact for the jury, and only rarely become questions of law for the court to determine. The same thing may be said of the defense of intervening third-party negligence.).

The majority declares that the evidence is susceptible of only one inference. To the contrary, there are at least two other reasonable inferences. Although there is little to no evidence of grandmother's negligence, there is evidence that grandmother may have acted reasonably. The one fact that may clearly be derived from the record is that grandmother had been threatened. The mental examination report, prepared by a licensed physician, states: "[Mother] is a danger to her mom [i.e. grandmother] and her daughter. Threatened mom last pm." Another medical report states: "Possibly into satanism. Threatened mother and daughter." Further, "Threatened daughter & mother last night. 'Put me in the

hospital and I'll kill you.' " Because grandmother had been threatened (even with death), we may well infer that she could have still felt intimidated of mother, even after her release, and that she gave up the child to mother for fear of harm.

Alternatively, we may infer that when grandmother learned that the Department had released mother, she could assume that the Department had correctly diagnosed and treated mother. It is alleged that mother, after her release, visited with grandmother for several hours. Perhaps mother was acting normally during these hours, leading grandmother to conclude that mother had been treated by the Department. On this basis, grandmother may have allowed mother to take the child.

Accordingly, whether grandmother allowed the child to be taken by mother because she was intimidated, or whether she felt mother had been treated, is a factual question that must be determined on remand by a jury on the basis of evidence to be presented, and not by this Court on the basis of a factually undeveloped record.

I would reverse the Court of Appeals' affirmance of the trial court's grant of summary judgment and remand this matter for trial.

WALLER, J., concurs.