22356

The BABCOCK CENTER, INC. d/b/a David E. Stewart Intermediate Care Facility for the Mentally Retarded (ICF/MR, Formerly Ridgewood IRM), and Pine Lake Intermediate Care Facility for the Mentally Retarded (ICF/MR), Appellants, v. OFFICE OF AUDITS, South Carolina Department of Social Services, Respondent.

(334 S. E. (2d) 112)

Supreme Court

*John D. Gregory,* of *Austin & Lewis,* Columbia, *for appellants.*

*Bruce Holland, Ellis Merritt, Jr.,* and *Timothy R. Fincher,* Columbia, *for respondent.*

Heard June 5, 1985.

Decided Aug. 6, 1985.

CHANDLER, Associate Justice:

The Babcock Center, Inc. (Babcock) appeals from a circuit court order affirming a decision of the Fair Hearing Committee (Committee) of the Department of Social Services (DSS). The Committee found that Babcock had received overpayments under a Medicaid program, for which DSS was due reimbursement.

We affirm in part and reverse in part.

## ISSUES

Babcock's appeal raises two questions:
1. Does the administrative hearing here violate Article I, Section 22 of the South Carolina Constitution, AND
2. Was the Committee's decision supported by substantial evidence?

## FACTUAL BACKGROUND

Babcock is a private, non-profit organization offering intermediate nursing care facilities for mentally retarded persons. Such organizations are referred to as "providers."

It contracted with DSS to provide such services for individuals eligible for Medicaid under the Social Security Act, specifically 42 U. S. Code Section 1396 *et seq.* The contracts called for reimbursement for services rendered by Babcock and, further, provided for periodic audits by DSS.

An Audit conducted in 1976 presented no dispute between the parties as to the method of record keeping and cost accounting used by Babcock in computing the dollar amounts claimed for reimbursement.

A subsequent audit for fiscal year 1980, based upon a different method of cost accounting, and new to Babcock, determined that Babcock had been overpaid and should be required to make reimbursement. Babcock denies overpayment and appeals from the adverse ruling of the Committee, affirmed by the circuit court.

The effect of the Committee's decision was to reduce the percentage of Babcock's total costs properly assignable to DSS from 75% to 57%. From demand by DSS of reimbursement for the disputed 18%, and refusal by Babcock, this litigation results.

## I. THE CONSTITUTIONAL CHALLENGE

South Carolina Constitution, Article I, Section 22 reads in part:

> No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency ... except on due notice and an opportunity to be heard; *nor shall he be subject to the same person for both prosecution and adjudication* ... [Emphasis supplied].

Babcock contends that the emphasized portion of Section 22 is violated, in that DSS has allowed its own employees, comprising the Fair Hearing Committee, to adjudicate the audit disallowances of its own auditors.

The basis of this contention is that the word "person" in the emphasized portion equates with the word "agency," so that the same person is both prosecuting and adjudicating. We disagree.

The question presented, although not decided heretofore by this Court, has been raised, considered and ruled upon in numerous federal and state court decisions.

■ In summary, the effect of these decisions, which we find should be followed, is that due process is not denied a provider by virtue of the fact, alone, that an appellate panel, such as the Committee here, is composed of individuals within the same organization, such as DSS here, which makes initial determinations in reimbursement disputes.

■ A presumption, the burden of which is upon the complainant to overcome, exists that members of such panels are unbiased.

"This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U. S. 188, 195, 102 S. Ct. 1665, 1670, 72 L. Ed. (2d) 1, 8 (1982).

In *Woodland Nursing Home Corporation v. Weinberger and Travelers Insurance Company*, 411 F. Supp. 501 (S.D.N.Y. 1976), the Court stated:

> The contention (that due process is denied, as Babcock contends) is frivolous. Due process of course requires a hearing before an impartial decision maker ... It does not, however, prohibit a single agency (such as DSS here) from combining investigative and adjudicative functions, one group or individuals passing upon facts developed by others *within the same organization.* [Parentheses and emphasis supplied.]

*Woodland,* at 504.

No issue is raised by Babcock of bias on the part of the Committee and, moreover, nothing is in the record to infer bias or any other reason for the Committee's disqualification.

We hold that the word "person" in the Constitutional language, "nor shall he be subject to the same person for both prosecution and adjudication," does not preclude, as a due process violation, an administrative agency from adjudicating appeals by panels composed of other persons within the same agency who did not participate in investigative or prosecutorial capacities.

We affirm.

## II. THE COMMITTEE DECISION: BASED ON SUBSTANTIAL EVIDENCE?

The parties agree that this judicial review is governed by Section 1-23-380 of the Administrative Procedures Act, and that the substantial evidence rule controls.

DSS bases its overpayment claim upon a finding by its auditors that Babcock used an inappropriate method of allocating costs assignable to Medicaid, although the method was the same used at the time of the 1976 audit and upon which Babcock's reimbursement claims were approved at that time.

The method employed by Babcock is known as the "patient weighted day" ("weighted") method. DSS auditors in the 1980 audit found that a method known as "accumulated cost" should have been used by Babcock.

The evidence upon which DSS relied solely was that presented in the testimony of its own auditor, Thomas D. Hansom, who supervised and participated directly in the 1980 audit.

Hansom admitted that under terms of the guideline furnished to providers, *Provider Reimbursement Manual* (HIM-15), the selection of a method of cost accounting was entirely up to the facility, within the methods outlined in HIM-15. Nothing in HIM-15 designates a particular method, the requirement in section 2306 being only that a method described in sections 2306.1-2310 be used to determine the actual cost of services rendered during the provider's initial Medicare reporting period. Section 2306 provides, further, that the provider may not thereafter change the method without approval of the intermediary. Babcock never sought a change.

Hansom testified repeatedly to his opinion that the "accumulated cost" method of allocating costs was superior to the "weighted" method employed by Babcock. However, his opinions represented conclusions not supported by substantial evidence.

On cross examination, he described the "accumulated cost" method, upon which the 1980 audit was conducted, as "simpler." However, he conceded it did not take into consideration the duties of Babcock employees, an inquiry into which was critical in determining their allocation of time in the administering of programs:

> Lewis: And it doesn't take into account what one secretary does, does it?
> Hansom: No, sir.
> Lewis: It doesn't take into account what one bookkeeper does?
> Hansom: No, sir.
> Lewis: It doesn't take into account what the administrator does?
> Hansom: That's true.
> Lewis: It doesn't take into account anything that the people doing the work actually do, does it?
> Hansom: No.
> Lewis: And it doesn't take into account what portion of the building is necessary. It doesn't take into account

what portion of the transportation are necessary. It doesn't take into account one real life fact, does it?

Hansom: One real life fact is, that the use of accumulated cost is a given acceptable method under Medicare.

Lewis: I didn't ask you that. I said it doesn't take into one real life fact what happens in the administrative overhead facility, does it?

Hansom: It may or may not.

Lewis: It doesn't, does it? Isn't that unfair? It's just based on a dollar.

Hansom: It is based on a dollar, yes, sir.

Hansom identified a Medicare form 2552 which he testified uses a method of cost finding, part of which "involves the allocation of administrative and general costs on the basis of *accumulated costs.*" [Emphasis supplied.]

Admittedly, a provider using form 2552 could not object to an audit based upon the "accumulated cost" method. However, form 2552 was not required or recommended at the time of the audit, as Hansom indicated in answer to questions by a member of the Committee, Mollie C. Corrie:

Corrie: Okay, one other question. This 2552 report, cost finding cost ...

Hansom: Yes Ma'am.

Corrie: Was this effort required or was Babcock Center at any time instructed or was it recommended that they use this form?

Hansom: It was recommended for *future* cost report periods. *As far as I know it was not recommended that they use this form during the period under audit.* I think Mr. Lewis has asked me that question earlier and I gave the same answer. [Emphasis supplied.]

The question of attorney Lewis, to which Hansom refers, occurred during his cross examination, in the course of which he testified, *incredibly*, that Babcock should have used form 2552, notwithstanding the form was not required and notwithstanding further, that other forms which Babcock used were furnished to Babcock by DSS:

Lewis: And so now I understand that you are talking about some form. Are you upset because Babcock didn't

choose to use that form. There is no requirement for them to use that form, is there?

\* \* \* \* \* \*

Hansom: *At the time of the audit the 2552 was not mandated for use by ICF/MR.*

Lewis: Thank you. And in fact aren't you aware that the forms that were given to use by Babcock, *were they furnished by DSS?* Do you know? Do you know where they got them?

Hansom: *I believe they were.*

Lewis: So all of a sudden we have ... they are using the forms by DSS and *you are sitting here saying they should have used 2552?*

Hansom: *Yes.*

Lewis: Thank you. [Emphasis supplied.]

Despite the efforts of DSS to represent "accumulated cost" as more accurate than "weighted" in allocation of costs, Hansom admitted that, if he based his audit upon trial testimony concerning the everyday activities of Babcock personnel, the 75% reimbursement figure resulting from the "weighted" method would "be more certainly the one I would use."

Babcock presented evidence from its officials and employees of the time spent upon activities related to Medicare solely and that spent upon activities related to other programs. These employees were interviewed by Babcock's witness, William D. Brigman, a certified public accountant and Medicaid consultant with the firm of Ernst and Whinney.

Brigman's explanation of the two cost accounting methods was clear and cogent. He testified that based on his study the "weighted" method was more accurate for the Babcock audit.

In defining "substantial evidence," this Court has held:

'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached to justify its action. [Citation omitted.]

*Law v. Richland Cty. School Dist. No. 1*, 270 S. C. 492, 495, 243 S. E. (2d) 192 (1978).

When the entire record is reviewed and considered, we hold that the finding of the Committee was not based upon substantial evidence and was, therefore, clearly erroneous.

We reverse.

### CONCLUSION

The evidence discloses that Babcock and all other providers are now sufficiently advised that form 2552 is mandated and that auditing on future reimbursement claims will be conducted on the basis of the "accumulated cost" method. This is fair notice.

On the other hand, it is patently unfair and arbitrary for DSS, without notice, to impose upon Babcock, a non-profit provider, a method of cost allocation new and different from the one which, implicitly and tacitly if not in writing, was approved in an audit only four years earlier.

Indeed, Hansom himself, when asked whether he thought it fair that DSS should say to Babcock in 1979 that a system "is no good," when it was the same system used and not complained about in 1976, testified:

> Hansom: Do I think it's fair?
> Lewis: Yeah.
> Hansom: As a layman I'd say heck no, it's not fair. I'd be mad.
> Lewis: Thank you. No further questions.

Affirmed in part and reversed in part.

LITTLEJOHN, C. J., and NESS, GREGORY and HARWELL, JJ., concur.