23249

CITY OF ROCK HILL, Appellant v. SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and South Carolina Wildlife and Marine Resources Department, Respondents.

(394 S.E. (2d) 327)

Supreme Court

*William H. Davidson, II* of *Nauful & Ellis, P.A.,* Columbia and *Emil W. Wald* of *Spencer and Spencer, P.A.,* Rock Hill, *for appellant.*

*General Counsel Walton J. McLeod, III, Staff Counsel William A. Ready,* both of *South Carolina Dept. of Health and Environmental Control,* and *Buford S. Mabry, Jr.,* and *James A. Quinn,* Columbia, *for respondents.*

Heard June 6, 1990.

Decided July 23, 1990.

HARWELL, Justice:

This case has been certified by the Court of Appeals to the Supreme Court pursuant to S.C. Code Ann. § 14-8-210(C) (Supp. 1989). The issue before us is whether respondent South Carolina Department of Health and Environmental Control (DHEC) has statutory authority to determine and assess damages against a violator of the Pollution Control Act and jurisdiction to assess, decree, and collect damages from a governmental entity.

## I. FACTS

Appellant City of Rock Hill (the City) owns and operates the Manchester Creek Waste Water Treatment Plant which

is located in York County. The City is authorized to discharge treated waste water into the Catawba River in accordance with the conditions contained in a permit issued to it by respondent South Carolina Department of Health and Environmental Control (DHEC). On May 27, 1987, DHEC's Catawba District office was notified that fish were observed dying in the Catawba River. The City also notified DHEC that a passthrough of sludge had occurred at the Manchester Creek Waste Water Treatment Plant. Further investigation revealed that approximately two million gallons of sludge were discharged into the Catawba River. Shortly thereafter, representatives of respondent South Carolina Wildlife and Marine Resources Department (Wildlife Department) conducted a survey of twenty-three miles of the Catawba River downstream from the treatment plant discharge point at the cost of $5,819.89 and estimated that 336,965 fish valued at $116,959.38 were destroyed as a result of the sludge discharge.

On July 28, 1987, pursuant to S.C. Code Ann. §§ 48-1-10 *et. seq.* (1987), DHEC served notice on the City requiring it to be present at a conference on August 5, 1987, to show cause why an administrative order should not be issued requiring compliance with the Pollution Control Act. The notice issued by DHEC also stated that any violation of 25 S.C. Code Ann. Reg. 61-68(D)(2)(a) through (d) (1976), which require that all ground and surface waters in the state be kept free from sewage, is subject to enforcement under S.C. Code Ann. § 48-1-50 (1987) and amenable to civil penalty under S.C. Code Ann. § 48-1-330 (1987). DHEC also notified the City that failure to attend the scheduled conference would be deemed an admission to such violations and would result in an issuance of an order without the City's consent. The Wildlife Department was permitted to intervene in the hearing.

Subsequent to the August 5, 1987 hearing, DHEC issued an administrative order finding the City in violation of the Pollution Control Act due to the unauthorized discharge and ordered the City to pay the Wildlife Department $122,779.27 for damages incurred by the State as a result of the fish-kill in the Catawba River. The City was also ordered to pay DHEC $30,000.00 in civil penalties.

The City then brought this declaratory judgment action which is the subject of this appeal. The City filed a motion for

summary judgment alleging that DHEC and the Wildlife Department have no statutory grant of jurisdiction which would allow them to assess damages against the City for violation of the Pollution Control Act and that exclusive jurisdiction for the assessment of damages against any political subdivision is vested solely with the circuit court under the South Carolina Tort Claims Act (Tort Claims Act) as set forth in S.C. Code Ann. §§ 15-78-10 *et seq.* (Supp. 1989).

A cross-motion for summary judgment was filed by DHEC and the Wildlife Department alleging that DHEC had authority under the Pollution Control Act to assess damages against the City for destruction of wildlife caused by a violation of the Pollution Control Act. The motion further alleged that jurisdiction of the action for such damages as well as civil penalties, rested in DHEC and that the aggrieved party has the right to appeal a final agency decision to the circuit court.

In granting DHEC and the Wildlife Department's cross-motion for summary judgment, the circuit court concluded that the Pollution Control Act which vests DHEC with broad powers in controlling pollution, grants DHEC the authority to assess and collect damages resulting from violation of its permit requirements. The circuit court further held that the Tort Claims Act does not operate to control whether DHEC may administratively determine and collect such damages. The circuit court remanded the matter and ordered DHEC to conduct a formal hearing at which evidence of damages was to be presented. It is from this order that the City appeals.

## II. DISCUSSION
### A. WHETHER DHEC HAS STATUTORY AUTHORITY UNDER THE POLLUTION CONTROL ACT TO ADMINISTRATIVELY DETERMINE AND ASSESS DAMAGES AGAINST A VIOLATOR OF THE POLLUTION CONTROL ACT

The Pollution Control Act provides DHEC with broad authority and power to regulate persons[1] who may pollute the environment of the State of South Carolina

---

[1] S.C. Code Ann. § 48-1-10(1) (1987) defines "Person" to include not only any individual, but any private or public corporation, political subdivision, government agency, municipality, and legal entity. Thus, the City is a person for purposes of the Pollution Control Act.

and to abate, control, and prevent such pollution. For example, DHEC may make, revoke, or modify orders requiring the discontinuance of the discharge of sewage or other wastes and may also issue, deny, revoke, suspend, or modify permits for the discharge of such wastes. *See, S.C. Code Ann.* § 48-1-50(3) and (5) (1987).

The Pollution Control Act also provides for damages to be recovered from those who violate the provisions of that chapter. S.C. Code Ann. § 48-1-90(b) (1987) specifically provides that any person who discharges organic or inorganic waste into the environment thereby damaging or destroying fish, shellfish, aquatic animals, wildlife, or plant life indigenuous to or dependent upon the receiving water or any property, shall be liable to the State for damage as may be proven. Section 48-1-90(b) also states that such action for damages shall be brought in the name of either the State or DHEC. While the Pollution Control Act does not specifically set forth the forum in which such damages are to be pursued, our review of the various provisions of the Act, reveals that the Act implies that DHEC not only has the authority to administratively assess penalties, but damages as well.

As creatures of statute, regulatory bodies such as DHEC possess only those powers which are specifically delineated. *City of Columbia v. Board of Health and Environmental Control,* 292 S.C. 199, 355 S.E. (2d) 536 (1987). By necessity however, a regulatory body possesses not only the powers expressly conferred on it but also those which must be inferred or implied to effectively carry out the duties for which it is charged. *Id.* Also, where an administrative agency such as DHEC is acting for the protection of the health of the environment, the delegation of authority to that agency should be construed liberally. *Id.* Under the Pollution Control Act, DHEC is charged with the responsibility of insuring that the waters of the State are as free of pollutants as possible. To achieve this end, DHEC has been granted broad authority. Implicit in this authority is the power to administratively assess damages which may occur from violations of the Pollution Control Act.

The City argues that Section 48-1-90(b) which states in pertinent part that "[t]he action [for damages] shall be brought by the State in its own name or in the name of the Depart-

ment," means that damages may only be pursued in a judicial proceeding in circuit court. The City's interpretation of this section is strained and cannot stand. To accept the City's construction would force DHEC, in a contested case, to first hold an administrative hearing to determine liability for failure to comply with a permit, administer penalties, obtain compliance with a permit, abate a source of pollution and then, institute a judicial proceeding in circuit court to determine liability and damages to be imposed on a person who has violated his permit. The City's construction of Section 48-1-90(b) would not only violate the purpose and the statutory intent of the Pollution Control Act, but would violate common sense and the tenets of judicial economy. The City also misinterprets Section 48-1-50(4) which grants DHEC the authority to institute in a court of competent jurisdiction, legal proceedings, to mean that an action for damages must be maintained in a circuit court. We interpret this section to merely provide DHEC with a judicial forum in which to enforce and compel compliance with previously made determinations of DHEC.

Although the City insinuates that a judicial forum is the only forum in which a fair and impartial hearing may be held, there is no basis in law or fact to establish this. *See, Babcock Center, Inc. v. Office of Audits*, 286 S.C. 398, 334 S.E. (2d) 112 (1985). Further, "[t]here is no constitutional objection to [the] legislature giving authorization to an administrative agency to award, as incidental relief in connection with [a] subject delegable to it, money damages where judicial review is available." 73 C.J.S., *Public Administrative Law and Procedure* § 33 (1983). Here, there can be no valid constitutional objection to DHEC's assessment of damages which is implicitly authorized by the Pollution Control Act when there exists fair and reasonable fact finding procedures in 25 S.C. Code Ann. Reg. 61-72 (1976) and the Administrative Procedures Act, S.C. Code Ann. §§ 1-23-310, *et seq.* (1986), and judicial review is available.

## B. WHETHER DHEC HAS JURISDICTION TO ASSESS, DECREE, AND COLLECT DAMAGES AGAINST THE CITY, A GOVERNMENTAL ENTITY

In denying the City's motion for summary judgment, the trial judge also rejected the City's argument that the Tort Claims Act controls jurisdiction where damages resulting from permit violations can be collected. The City now argues on appeal that the trial judge erred and that even if DHEC can assess and collect damages for its fish-kill, the exclusive remedy for the negligent discharge of pollutants by a governmental entity is under the Tort Claims Act. The City argues that the exclusivity of the Tort Claims Act is illustrated by the language contained in Section 15-78-70(a) which states, "[t]his chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity." We disagree with the City and find the trial judge correctly determined that the Tort Claims Act does not control jurisdiction under the facts of this case for the reasons discussed below.

First, we note that liability under the Pollution Control Act is strict and although such a violation may involve a tort including nuisance or negligence, there is no requirement for such a finding for the City to be liable for a violation of the Pollution Control Act. *See, Carolina Chemicals, Inc. v. South Carolina Department of Health and Environmental Control,* 290 S.C. 498, 351 S.E. (2d) 575 (Ct. App. 1986) (under the Pollution Control Act, the legislature intended that strict liability be imposed for pollution of the environment). Secondly, if we were to hold the Tort Claims Act to be the exclusive remedy in this case, certain provisions of the Pollution Control Act would be repealed by implication. Repeals by implication are not favored by courts and to repeal a statute on account of an asserted conflict or repugnancy with another, "the repugnancy must not only be plain, but the provisions of the two statutes must be incapable of any reasonable reconcilement; for if they can be construed so that both can stand, the Court will so construe them." *Pearson v. Mills Manufacturing Co.,* 82 S.C. 506, 509, 64 S.E. 407, 409 (1909). Further, the general rule is that statutes of a specific nature, such as those contained in the Pollution Control Act are not to be considered as repealed in whole or in part by later general statutes such as those included in Tort Claims Act, unless there is a direct reference to the former statute or the intent of the legislature to repeal is explicitly

implied therein. *See, Sharpe v. South Carolina Department of Mental Health*, 281 S.C. 242, 315 S.E. (2d) 112 (1984).

Here, we find that the Pollution Control Act and the Tort Claims Act are not repugnant and can be easily reconciled. The purpose of the Pollution Control Act is obvious: that of establishing a comprehensive regulatory scheme to control pollution of the environment. To hold that the Tort Claims Act supersedes provisions of the Pollution Control Act would seriously disturb the Pollution Control Act's comprehensive regulatory scheme. This could not have been the intention of the legislature. Although the Tort Claims Act was enacted subsequent to the Pollution Control Act, we find that under the facts of this case, the latter is the more specific statute and should take precedence over the more general statute, the Tort Claims Act. Further, there is no language in the Tort Claims Act which either expressly or implicitly negates any of the provisions of the Pollution Control Act.

## III. CONCLUSION

We find that the trial judge correctly determined that DHEC can administratively determine and assess damages resulting from a violation of the Pollution Control Act. As to the City's second argument that the Tort Claims Act is the exclusive remedy for the violations that occurred here, we find that the trial judge also properly determined that the Tort Claims Act has no application as to these facts and that the Pollution Control Act is the controlling chapter.

Affirmed.

GREGORY, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.