23776

EDISTO AQUACULTURE CORPORATION, a South Carolina Corporation, Appellant v. SOUTH CAROLINA WILDLIFE AND MARINE RESOURCES DEPARTMENT, and Thomas M. Miller, J.M. Pendarvis, Marion Burnside, Larry C. Owen, George G. Graham, Charles L. Compton, John J. Snow, Jr., John Drummond, and Howard H. Poston, Jr., in their official capacities, collectively known as the Wildlife and Marine Resources Commission, Respondents.

(426 S.E. (2d) 753)

Supreme Court

*O.W. Bannister, Jr.,* of *Hill, Wyatt & Bannister,* Greenville, *for appellant.*

*Buford S. Mabry, Jr.* and *James A. Quinn,* both of *South Carolina Wildlife and Marine Resources Dept.,* Columbia, *for respondents.*

Heard Dec. 10, 1992.

Decided Jan. 11, 1993.

TOAL, Justice:

This case arises on appeal from the trial court's dismissal of Appellant's complaint under Rule 12(b)(6), SCRCP. We affirm.

### FACTS

The Appellant, Edisto Aquaculture (hereinafter Edisto), operates a shrimp farm on Edisto Island, South Carolina. In order to import and possess a certain species of non-native shrimp for use in its facility, Edisto must obtain a permit under S.C. Code Ann. § 50-16-20 (1992).

The Respondent, South Carolina Wildlife and Marine Resources Commission (hereinafter Commission), at its November 1990 meeting, directed the Department it governs to put certain conditions in the aquaculture permits. These conditions were placed in issue by Edisto when they requested the Commission to reconsider their decision. At the next meeting, the Commission, after discussion, denied Edisto's rehearing request.

The disputed permit conditions require that all natural resource-related permits for the facility be obtained, and certified by the Department of Agriculture, prior to the issuance of an import permit.

On February 25, 1991, Edisto brought this action challenging the permit requirements alleging that such requirements were not promulgated in accordance with the Administrative Procedures Act, S.C. Code Ann. § 1-23-126 (1986), and that the Commission's delegation of authority to the Department of Agriculture was unauthorized. During the pendency of this action, Edisto was issued a permit on March 12, 1991. This permit remains in effect as of the date of this appeal.

After the submission of the pleadings, both parties moved for Summary Judgment, and in an order dated May 21, 1991, the trial judge granted the Commission's motion. Edisto's petition for reconsideration, filed on June 3, 1991, was denied by order dated July 11, 1991. Edisto has appealed.

### LAW/ANALYSIS

Edisto raises two issues on appeal. The first is whether the permit requirements established by the Commission are regulations which must comport with the Administrative Procedures Act, codified at S.C. Code Ann. §§ 1-23-10 et seq. (1986). The second is whether the Commission unlawfully delegated their power and authority, where the Commission conditioned the issuance of an import permit on Edisto securing certification from the Department of Agriculture, that all other necessary permits required to operate as an aquaculture business were obtained.[1]

Edisto asserts that the permit requirements established by the Commission are regulations which must comply with the Administrative Procedures Act (APA). As a condition for the import of non-indigenous shrimp, the Commission required certification from the Department of Agriculture that all other natural resource permits were obtained. Edisto alleges that in order to impose this condition, the Commission should promulgate a regulation pursuant to the APA. The trial judge found that the Commission's permit requirements are essentially a licensing matter which is outside the ambit of the APA.

---

[1] Specifically the conditions stated that:

[t]he Department of Agriculture shall certify that all permits from the S.C. State Budget and Control Board, S.C. Coastal Council, and/or the S.C. Department of Health and Environmental Control have been secured prior to the issuance of the permit under this section.

Regulation is defined in S.C. Code Ann. § 1-23-10(4) (1986), as an:

> agency statement of general public applicability that implements or prescribes law or policy or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation but does not include descriptions of agency procedures applicable only to agency personnel . . . decisions or orders in rate making, price fixing or licensing matters. . . .

*Id.*

Edisto argues that the terms and conditions of the permit issued by the Commission are enacted pursuant to the authority granted by S.C. Code Ann. § 50-16-50 (1992), which specifically authorizes the Commission to publish regulations. This enabling legislation provides that "[t]he department may promulgate regulations to effectuate the provisions of this chapter." *Id.* [emphasis added]. At first blush, the facts in this case appear to be on point with the situation we faced in *Captain's Quarters Motor Inn, Inc. v. South Carolina Coastal Council,* — S.C. —, 413 S. E. (2d) 13 (1991). In *Captain's Quarters,* we held that an agency, "[a]s a creature of statute, . . . is possessed of only those powers expressly conferred or necessarily implied for it to effectively fulfill the duties with which it is charged." *Id.* at —, 413 S.E. (2d) at 14. There is, however, a significant difference in the enabling statute presented in *Captain's Quarters,* which required the Coastal Council to promulgate regulations. The simple answer here is that the Commission may promulgate regulations, since there is no mandatory language in § 50-16-50. This difference in underlying statutes allows the Commission a level of discretion that the Coastal Council does not have.

The trial judge answered Edisto's allegation by equating the permit process to the licensing process, which is exempted from the APA. The trial court relied on our decisions announced in *City of Rock Hill v. South Carolina Department of Health and Environmental Control,* 302 S.C. 161, 394 S.E. (2d) 327 (1990), and *City of Columbia v. Board of Health and Environmental Control,* 292 S.C. 199, 355 S.E. (2d) 536 (1987), which stand for the proposition that the power to permit necessarily carries with it the power to place conditions on a per-

mit. The trial judge in his order stated, that "[i]f every condition placed on a permit had to be embodied in a regulation, the whole permitting system of the Wildlife Department and many other agencies would collapse." We agree and would note that this is even more significant where the administrative agency has discretion in issuing regulations.

Edisto points to the fact that most other requirements for permits are located in regulations already published by the Commission. This is irrelevant since the General Assembly clearly allows the Commission discretion in regulating the aquaculture industry. The General Assembly further reinforces this discretion with legislation which provides guidance on the permit process. S.C. Code Ann. § 50-16-20(B) (1992) provides that:

> [a] permit [to import shrimp] **may** be granted only after the investigations and inspections of the wildlife have been made as the department considers necessary and the department approves the possession, transportation, or importation into the State. The department may not issue a permit unless it finds:
> (1) The wildlife was taken lawfully in the jurisdiction in which it originated;
> (2) the importation, release, or possession of the wildlife is not reasonably expected to adversely impact the natural resources of the State or its wildlife populations.

S.C. Code Ann. § 50-16-20(B) (1992). [Emphasis added.]

The General Assembly has given the Commission the discretion to condition the approval of a permit without issuing a regulation. Although it would probably be in the better interests of the State to issue a regulation, we can not say that the Commission has exceeded their authority or violated the Administrative Procedures Act.

The second issue on appeal is whether the Commission is unlawfully delegating its authority to the Department of Agriculture. Prior to the issuance of an importation permit, the Commission requires the requesting party to secure "all natural resource related permits or licenses from other agencies . . . required for operation of this facility. . . ." As a means of insuring compliance with this requirement, the Commission further requires the requesting

party to secure the Department of Agriculture's certification that the requesting party has obtained all the natural resource permits necessary to operate an aquaculture facility. Edisto maintains that this certification process is tantamount to giving the Department of Agriculture approval authority for the issuance of the import permit. Edisto argues that since regulatory bodies possess only those powers which are specifically delineated, they can not delegate this approval authority. *See City of Rock Hill*, 302 S.C. at 161, 394 S.E. (2d) at 327. The trial judge held that the conditioning of approval, on Edisto's compliance with all natural resource permits necessary for operation, was the equivalent of requiring compliance with all legalities prior to the issuance of a license. We agree since the only alternative is to require an agency to issue a permit without regard to the applicant's compliance with the law.

The General Assembly recognizes the need for coordination among the various agencies in the area of aquaculture. This legislative intent is voiced in 1988 S.C. Acts 587, which provides:

> WHEREAS, aquaculture is an important form of both fisheries and agriculture. The Department of Agriculture will be responsible for coordination of promotion and marketing of aquaculture development in the State and for facilitating acquisition of aquaculture permits. The Wildlife and Marine Resources Department will be responsible for aquacultural law enforcement and coordination of research and development. Both agencies **shall coordinate** their respective efforts with all other agencies of state government.

*Id.* [Emphasis added.]

The Commission has some discretion in what regulations it promulgates over the aquaculture industry, and has a legislative mandate to coordinate its efforts with the Department of Agriculture. We find that the Commission's actions are completely consistent with this legislative intent and, therefore, can not constitute an unauthorized delegation of authority.

For these reasons, the trial court is AFFIRMED.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.