**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Duke Energy Carolinas, LLC, Respondent,

v.

South Carolina Department of Health and Environmental Control, South Carolina Attorney General, American Rivers, and The South Carolina Coastal Conservation League, Defendants, Of whom South Carolina Department of Health and Environmental Control and American Rivers and The South Carolina Coastal Conservation League are, Appellants.

Appellate Case No. 2010-166486

---

Appeal From Administrative Law Court
Ralph King Anderson, III, Administrative Law Judge

---

Unpublished Opinion No. 2012-UP-694
Heard May 23, 2012 – Filed December 12, 2012
Withdrawn, Substituted and Refiled May 1, 2013

---

**REVERSED AND REMANDED**

---

Stephen P. Hightower, of Columbia, for Appellant South Carolina Department of Environmental Control.
Christopher K. DeScherer, J. Blanding Homan, IV, and Frank S. Holleman, III, all of the Southern

Environmental Law Center, of Charleston, for Appellants
American Rivers and South Carolina Coastal
Conservation League.

James Wm. Potter, W. Thomas Lavender, Jr., Joan W.
Hartley, all of Nexsen Pruet, LLC, of Columbia, for
Respondent.

---

**LOCKEMY, J.:**  In this administrative action, South Carolina Department of Health and Environmental Control (DHEC) appeals the administrative law court's (ALC) decision, arguing that the ALC erred in finding: (1) DHEC's review of Duke Energy Carolinas, LLC's (Duke) water quality certification application was not timely and (2) DHEC waived its right to issue a water quality certification to Duke.  American Rivers and South Carolina Coastal Conservation League (Coastal Conservation) (collectively Conservation Groups) also appeal the ALC's decision and contend the ALC erred in:  (1) refusing to give effect to Regulation 61-30; (2) finding DHEC's decision untimely; (3) misconstruing Regulation 61-101; (4) ignoring facts that showed Duke was estopped from arguing DHEC's decision was untimely; and (5) failing to find that Duke waived any challenge to DHEC's certification decision and the State's certification authority.[1]  We reverse and remand.

## FACTS

We first review the relevant statutory framework for these facts.  Section 401 of the Clean Water Act (CWA), 33 U.S.C. §§ 1251-1387 (2010), "requires States to provide a water quality certification [WQC] before a federal license or permit can be issued for activities that may result in any discharge into intrastate navigable waters." *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 707 (1994); *see* 33 U.S.C. § 1341 (2010).  States "shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications."  33 U.S.C. § 1341(a)(1).  Further, section 401 of the CWA provides:

---

[1] DHEC and the Conservation Groups will be collectively referred to as Appellants.

> If the State . . . fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application. No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence.

*Id.*

"The Pollution Control Act [PCA] empowers DHEC to 'take all action necessary or appropriate to secure to this [s]tate the benefits of the Federal [CWA].'" S.C. Code Ann. § 48-1-50(17) (Rev. 2008). Section 48-1-30 of the South Carolina Code (Rev. 2008) authorizes generally that DHEC shall promulgate regulations guiding the procedures for permits under the PCA. Regulation 61-101was then promulgated pursuant to section 48-1-30 to establish procedures and policies for implementing the WQC requirements of Section 401 of the CWA. S.C. Code Ann. Regs. 61-101 (Supp. 2011); *S.C. Coastal Conservation League v. S.C. Dep't of Health and Envtl. Control*, 390 S.C. 418, 430, 702 S.E.2d 246, 253 (2010).

Regulation 61-101 requires that any applicant for a federal license or permit, including those issued by Federal Energy Regulatory Commission (FERC), to conduct any activity which during construction or operation may result in any discharge in navigable waters, must obtain a water quality certification from DHEC. S.C. Code Ann. Regs. 61-101(A)(2). Further, it establishes a time frame for review of the applications, stating

> [DHEC] is required by Federal law to issue, deny, or waive certification for Federal licenses or permits within one (1) year of acceptance of a completed application unless processing of the application is suspended. If the Federal permitting or licensing agency suspends processing of the application on request of the applicant or [DHEC] or of its own volition, suspension of processing of application for certification will also occur, unless specified otherwise in writing by [DHEC]. Unless otherwise suspended or specified in this regulation, [DHEC] shall issue a proposed decision on all

applications within 180 days of acceptance or an application.

S.C. Code Ann. Regs. 61-101(A)(6). Review can begin when an applicant has presented DHEC with a complete application in the manner specified by Regulation 61-101. S.C. Code Ann. Regs. 61-101(C)(1). An application must contain the names and addresses of adjacent property owners. S.C. Code Ann. Regs. 61-101(C)(1)(f).

Regulation 61-101(C)(2) states

[i]f [DHEC] does not request additional information within ten (10) days of receipt of the application or joint public notice, the application will be deemed complete for processing; however, additional information may still be requested of the applicant within sixty (60) days of receipt of the application.

Moreover, Regulation 61-101(C)(4) provides

[w]hen [DHEC] requests additional information it will specify a time for submittal of such information. If the information is not timely submitted and is necessary for reaching a certification decision, certification will be denied without prejudice or processing will be suspended upon notification to the applicant by [DHEC]. Any subsequent resubmittal will be considered a new application.

The Environmental Protection Fund Act (Fund Act), sections 48-2-10 to 48-2-90 of the South Carolina Code (Rev. 2008 & Supp. 2011), was enacted for the purpose of creating a fund whose "monies must be used for improved performance in permitting, certification, licensing, monitoring, investigating, enforcing, and administering [DHEC's] functions." S.C. Code Ann. § 48-2-40 (Rev. 2008). The Fund Act applies to the processing of all environmental permits, licenses, certificates, and registrations authorized by the PCA, Clean Air Act, Safe Drinking Water Act, Hazardous Waste Management Act, Atomic Energy Act, and the Oil and Gas Act. S.C. Code Ann. § 48-2-30(B) (Rev. 2008 & Supp. 2011). WQCs are also covered by the Fund Act. S.C. Code Ann. § 48-2-50(H)(1)(b) (Supp. 2011).

The Fund Act contains a provision entitled, "Processing of permit application; maximum time for review," which mandates that DHEC promulgate regulations governing the timeliness, thoroughness, and completeness of DHEC's processing of application subject to the Fund Act. S.C. Code Ann. § 48-2-70 (Rev. 2008). Section 48-2-70 states

> [u]nder each program for which a permit processing fee is established pursuant to this article, the promulgating authority also shall establish by regulation a schedule for timely action by [DHEC] on permit applications under that program. These schedules shall contain criteria for determining in a timely manner when an application is complete and the maximum length of time necessary and appropriate for a thorough and prompt review of each category of permit applications and shall take into account the nature and complexity of permit application review required by the act under which the permit is sought. If the department fails to grant or deny the permit within the time frame established by regulation, the department shall refund the permit processing fee to the permit applicant.

§ 48-2-70. DHEC promulgated the Environmental Protection Fees, S.C. Code Ann. Regs. 61-30 (2011), in accordance with the Fund Act. Its purpose and scope is described as follows:

> This regulation prescribes those fees applicable to applicants and holders of permits, licenses, certificates, certifications, and registrations (hereinafter, "permits") and establishes schedules for timely action on permit applications. This regulation also establishes procedures for the payment of fees, provides for the assessment of penalties for nonpayment, and establishes an appeal process to contest the calculation or applicability.

S.C. Code Ann. Regs. 61-30(A). Regulation 61-30 also provides in pertinent part that "[a]pplication fees shall be due when the application is submitted. The

Department will not process an application until the application fee is received." S.C. Code Ann. Regs. 61-30(C)(1)(b). Further, the regulation maintains that

> [t]he schedule shall be tolled when the Department makes a written request for additional information and shall resume when the Department receives the requested information from the applicant. If an applicant fails to respond to such a request within 180 days, the Department will consider the application withdrawn and the application fee will be forfeited. The Department shall notify the applicant no later than 10 days prior to expiration of the 180-day period.

S.C. Code Ann. Regs. 61-30(H)(1)(c).

On June 5, 2008, Duke filed an application with DHEC to obtain a WQC for a FERC license authorizing Duke's continued operation of the Catawba-Wateree Hydroelectric Project in South Carolina. The application was submitted without the required names and addresses of the adjacent property owners. Additionally, Duke did not provide the regulatory application fee.

On June 27, 2008, Duke supplied DHEC with several lists that contained the names of interested citizens and stakeholders who had contacted Duke and requested notification of matters regarding Duke's FERC application. However, the lists still did not contain all the names and addresses of the adjacent property owners. On July 29, 2008, Duke provided DHEC with a list of the names and addresses of all the adjacent property owners. In response to Duke's fulfillment of that requirement, DHEC notified Duke by email that it was placing Duke's application on public notice. However, DHEC also specified it still required an affidavit of publication and the required application fee from Duke before its review would commence and the 180 day clock would start. DHEC placed Duke's application on public notice on August 8, 2008.

DHEC also sent a letter to Duke dated August 19, 2008 (Letter 1), requesting additional information regarding the draft Quality Assurance Program Plan (QAPP) that Duke had submitted with their application. Letter 1 further requested that Duke submit the information to DHEC by October 19, 2008, and notified Duke that pursuant to Regulation 61-30, DHEC had 180 days to issue a decision once the application was complete. Letter 1 also stated Duke's application would

not be complete for processing until the application fee and affidavit of publication requested previously was received, and that "the clock stops when information is requested and [DHEC] is waiting on a response."

DHEC received the affidavit and application fee on August 25, 2008.  DHEC then sent two more letters to Duke requesting additional information needed to process Duke's application.  One letter (Letter 2) was sent to Duke on October 8, 2008, requesting the additional information by November 8, 2008.  On November 10, 2008, DHEC received the information requested in the October 8 letter.  Another letter (Letter 3) was sent to Duke on October 21, 2008, requesting information to be sent to DHEC by November 21, 2008.  DHEC received a partial response on the due date for the information.  The remainder of the information was received by DHEC on December 12, 2008.

On May 15, 2009, DHEC issued its Notice of Department Decision (Notice), granting Duke's WQC.  The Conservation Groups appealed the Notice on May 15, 2009, challenging DHEC's proposed WQC on the grounds that it would permit Duke to operate its project in violation of water quality standards.  The South Carolina Board of Health and Environmental Concern (Board) granted the Conservation Groups' request for a final review conference, which was held on July 9, 2009.  On August 6, 2009, the Board issued a final agency decision, overturning DHEC's issuance of Duke's WQC.

Duke appealed the Board's decision by filing a request for a contested case proceeding in the ALC on September 5, 2009.  By an order dated November 9, 2009, the ALC admitted the Conservation Groups and the South Carolina Attorney General as respondent-intervenors.[2]  On January 21, 2010, Duke filed two motions with the ALC, one for summary judgment and the second for declaratory judgment.  Duke based its argument for summary judgment on two grounds:  (1) pursuant to regulation 61-101(A)(6) of the South Carolina Code (Supp. 2011), DHEC was required to issue a proposed decision on Duke's application for a WQC within 180 days of receiving the application on June 5, 2008, and (2) by operation of law, the State waived its right to issue certification when DHEC failed to either issue or deny the WQC on or before December 2, 2008.

---

[2] The ALC limited the participation of the South Carolina Attorney General to issues impacting the State's law suit against the State of North Carolina seeking a ruling from the United States Supreme Court on the proper apportionment of water from the Catawba River.

DHEC filed a response on February 12, 2010 in which it argued for denial of Duke's motions. A hearing was held on May 6, 2010, and on June 10, 2010, the ALC granted Duke's motion for summary judgment, but failed to rule on Duke's motion for declaratory judgment. DHEC and the Conservation Groups filed a joint motion for reconsideration, which the ALC denied. Both DHEC and the Conservation Groups filed timely appeals from the ALC's decision to grant summary judgment to Duke and its denial of their joint motion for reconsideration, which this court has consolidated under this caption.

## STANDARD OF REVIEW

"Appeals from the ALC are governed by the Administrative Procedures Act (APA)." *MRI at Belfair, LLC v. S.C. Dept. of Health and Envtl. Control*, 394 S.C. 567, 572, 716 S.E.2d 111, 113 (Ct. App. 2011). "Pursuant to the APA, this court may reverse or modify the ALC if the appellant's substantial rights have been prejudiced because the administrative decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by an error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Id.* (citing S.C. Code Ann. § 1-23-380(5) (Supp. 2010)).

"When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Turner v. Milliman*, 392 S.C. 116, 121-22, 708 S.E.2d 766, 769 (2011) (citing *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002)). "Rule 56(c) of the South Carolina Rules of Civil Procedure provides a motion for summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Media Gen. Commc'ns, Inc. v. S.C. Dept. of Revenue*, 388 S.C. 138, 144, 694 S.E.2d 525, 527 (2010) (citing Rule 56(c), SCRCP); *see also* ALC Rule 68 (stating the South Carolina Rules of Civil Procedure may be applied in proceedings before the ALC to resolve questions not addressed by the ALC rules). In determining whether a genuine issue of material fact exists, "the court must view the evidence and all reasonable inferences that may be drawn from the evidence in

the light most favorable to the non-moving party."  *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 456, 684 S.E.2d 756, 758 (2009).

## LAW/ANALYSIS

## Application of Regulation 61-30 to Regulation 61-101

"Regulations are interpreted using the same rules of construction as statutes." *Murphy v. S.C. Dep't of Health and Envtl. Control*, 396 S.C. 633, 639, 723 S.E.2d 191, 195 (2012); *see S.C. Ambulatory Surgery Ctr. Ass'n v. S.C. Workers' Comp. Comm'n*, 389 S.C. 380, 389, 699 S.E.2d 146, 151 (2010).  "'When interpreting a regulation, we look for the plain and ordinary meaning of the words of the regulation, without resort to subtle or forced construction to limit or expand [its] operation.'"  *Murphy*, 396 S.C. at 639-40, 723 S.E.2d at 195 (quoting *Converse Power Corp. v. S.C. Dep't of Health & Envtl. Control*, 350 S.C. 39, 47, 564 S.E.2d 341, 346 (Ct. App. 2002).  "Furthermore, we give deference to the interpretation of a regulation by the agency charged with it [sic] enforcement."  *Id.* at 640, 723 S.E.2d at 195; *see Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 469, 636 S.E.2d 598, 607 (2006) ("The construction of a statute by an agency charged with its administration is entitled to the most respectful consideration and should not be overruled absent compelling reasons.").

"The primary rule of statutory construction is to ascertain and give effect to the intent of the [legislature]."  *Beaufort Cnty. v. S.C. State Election Comm'n*, 395 S.C. 366, 371, 718 S.E.2d 432, 435 (2011) (citing *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011)).  "This [c]ourt has held that a statute shall not be construed by concentrating on an isolated phrase."  *Id.* (citing *Laurens Cnty. Sch. Dists. 55 & 56 v. Cox*, 308 S.C. 171, 174, 417 S.E.2d 560, 561 (1992) ("The true guide to statutory construction is not the phraseology of an isolated section or provision, but the language of the statute as a whole considered in the light of its manifest purpose. In applying the rule of strict construction the courts may not give to particular words a significance clearly repugnant to the meaning of the statute as a whole, or destructive of its obvious intent.")); *see also Sloan*, 370 S.C. at 468, 636 S.E.2d at 606-07 ("A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers.").  "Moreover, it is well settled that statutes dealing with the same subject matter are in pari materia and must be construed together, if possible, to

produce a single, harmonious result." *Beaufort Cnty.*, 395 S.C. at 371, 718 S.E.2d at 435.

First, we briefly address Appellants' argument that the ALC erred in finding *Responsible Economic Development, et al. v. South Carolina Department of Health and Environmental Control and Wal-Mart Stores East, LP*, 371 S.C. 547, 641 S.E.2d 425 (2007) applied to the instant case. *Responsible Economic* held that regulations from different enabling acts could not be applied to each other when the regulations did not reference each other and there is an absence of statutory authorization to apply the two acts and their corresponding regulations to each other. We agree with the Conservation Groups' contention that the present case is distinguishable from *Responsible*.

Section 48-2-70, under which Regulation 61-30 is promulgated, explicitly states DHEC must establish by regulation a schedule for timely action on permit applications for a WQC. S.C. Code Ann. § 48-2-70 (Rev. 2008). It further states the schedule must have criteria for determining in a timely manner when an application is complete along with the maximum length of time necessary and appropriate for a thorough and prompt review required by the act under which the permit is sought. *Id.* The statute's plain language indicates the time schedule provided in Regulation 61-30, as well as any corresponding explanation of how to count the days in that time schedule, would be applicable to any previous regulation under which the permit is authorized.

Regulation 61-30 "prescribes those fees applicable to applicants and holders of permits, licenses, certificates, certifications, and registrations (hereinafter, "permits") *and establishes schedules for timely action on permit applications*." S.C. Code Ann. Regs. 61-30(A) (emphasis added). The regulation defines "time schedule" as follows:

> In accordance with S.C. Code Sections 48-2-70 and 48-39-150, a "schedule of timely review" for purposes of this regulation shall begin when the applicant is notified that the application is administratively complete or within ten days of receipt of the application, whichever comes first; and end when a final decision is rendered. *It will include required technical review, required public notice, and end with a final decision by the Department to issue or deny the permit.* The time schedule may be tolled or

> extended in accordance with the conditions stipulated in
> Section H(1) of this regulation.

S.C. Code Ann. Regs. 61-30(B)(22) (emphasis added). Section H(2)(a)(vii) lists the time schedules for environmental permits for water pollution control and allows 180 days for a WQC permit to be processed; this time schedule mirrors Regulation 61-101's time schedule for permit review. Regulation 61-30 also states an application is not to be processed until the required processing fee is received. Duke argues that the 61-30 solely governs the time schedule by which a fee must be returned due to untimely action, and has no bearing upon the time schedule of the actual substantive decision of whether a permit will be granted. We have difficulty understanding how the processing of a permit hinges upon receipt of the fee, but then once that fee is received, there is a separate time schedule applied to each. There are multiple references to the substantive permit review process in Regulation 61-30, and many portions of Regulation 61-30's requirements and procedures regarding the application procedure mirror the requirements in Regulation 61-101. Reading the statutory mandates and regulatory requirements in their plain and ordinary sense indicates that Regulation 61-30 and 61-101 were to be read together to provide DHEC more flexibility in the processing of permits.[3] Both of the regulations can exist without one negating the other, as Regulation 61-30 clarifies how Regulation 61-101's 180-day time period of review will be counted.

Section H(1) of Regulation 61-30 sets the procedure for counting the days in a given time schedule, and allows for tolling as well as suspension of the time schedule. S.C. Code Ann. Regs. 61-30(H)(1)(c)-(d). Because we find Regulation 61-101 and Regulation 61-30 are applicable to each other, we believe that the tolling provisions of 61-30 are also applicable to Regulation 61-101. Additionally, DHEC explained its interpretation of the time schedule to Duke Energy in their letter dated October 19, 2008, as well as in other documents. It cited Regulation 61-30, and stated that while DHEC had 180 days to complete its action on the application, only the days on which DHEC was actively reviewing the application

---

[3] We are not encouraging untimely action by state agencies. Further, we make no determinations in the present case as to the reasonableness of DHEC's requests for information, as that is not an issue on appeal. Simply put, we believe that these regulations recognize the need for some flexibility in making these complex permitting decisions, such as under these facts, where the applicant is untimely with their responses to DHEC's requests.

would be counted. DHEC maintained the clock stopped when information was requested and DHEC was awaiting a response.  These documents reflect DHEC's understanding of its own regulations, and Duke Energy was made fully aware of that understanding.  Further, we believe DHEC's interpretation complies with the regulations' plain language.

We find the language of section 48-2-70 provides that the regulations promulgated under its authority are to enhance DHEC's review process for any permits which require a processing fee, including a WQC.  S.C. Code Ann. § 48-2-70 (Rev. 2008).  Accordingly, we hold the ALC erred in finding, as a matter of law, that Regulation 61-30 had no application to Regulation 61-101.  Thus, we reverse the ALC.

**Estoppel**

The Conservation Groups argue that because Duke had full knowledge that DHEC was operating by the full time period provided by reading Regulation 61-101 and Regulation 61-30 in conjunction, Duke is now estopped from maintaining that Regulation 61-30 is not applicable to Regulation 61-101.  We decline to make a ruling on this issue, as it is moot in light of our above holding.  *See Byrd v. Irmo High Sch.*, 321 S.C. 426, 431, 468 S.E.2d 861, 864 (1996) (noting an issue becomes moot when a decision, if rendered, will have no practical legal effect upon the existing controversy).

**Waiver of Water Quality Certification**

Because we reverse and remand the ALC's grant of summary judgment based upon our finding that Regulation 61-30 does apply to Regulation 61-101, it is unnecessary for us to determine DHEC's arguments and additional sustaining grounds regarding waiver.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that if an appellate court's ruling on a particular issue is dispositive of an appeal, rulings on remaining issues are unnecessary).

**CONCLUSION**

For the foregoing reasons, we reverse and remand the ALC's decision to grant summary judgment.

**REVERSED AND REMANDED.**

**WILLIAMS, J., concurs.**

**THOMAS, J., dissenting:** I respectfully dissent and would affirm the order of the ALC.

As the majority has stated, Regulation 61-101 was promulgated pursuant to the South Carolina Pollution Control Act, S.C. Code Ann. §§ 48-1-10 through -350. (2008 and Supp. 2012). This regulation, which is entitled "Water Quality Certification," "establishes procedures and policies for implementing State water quality certification requirements of Section 401 of the Clean Water Act, 33 U.S.C. Section 1341." 8A S.C. Code Ann. Regs. 61-101.A.1 (Supp. 2012).

Paragraph A.6 of Regulation 61-101 references the requirement in the Clean Water Act quoted by the majority that a State must act on a request for water quality certification within a reasonable period of time. Under the Federal Clean Water Act, this period is not to exceed one year after receipt of a certification request unless processing of the application is suspended. If the deadline is not met, "the certification requirements of this subsection shall be waived with respect to such Federal application." 33 U.S.C. § 1341(a)(1) (2006). Regulation 61-101.A.6 references the one-year deadline in the Clean Water Act for a state to act on a request for water quality certification, but imposes a shorter time limit of one hundred eighty days for DHEC to act on such a request. This regulation further provides that "[u]nless otherwise suspended or specified *in this regulation*, [DHEC] shall issue a proposed decision on all applications within 180 days of acceptance or [sic] an application." (emphasis added).

The circumstances under which Regulation 61-101 allows DHEC to suspend processing of application for water quality certification or to delay a decision past one hundred eighty days after it is received by DHEC are explained in paragraphs 2 through 4 of subsection C of the regulation.[4] Under paragraph 2, DHEC may request additional information within sixty days after receiving an application even

---

[4] Regulation 61-101.A.6 also provides that the suspension of the application process can occur "if the Federal permitting or licensing agency suspends processing of the application on request by the applicant or [DHEC] of its own volition"; however, none of these circumstances are present here.

if the application has already been deemed complete for processing. Paragraph 3 specifies the type of information that DHEC can request, such as water quality monitoring data, water quality modeling results, or other environmental assessments. Central to this appeal is paragraph 4, which provides as follows:

> When [DHEC] requests additional information it will specify a time for submittal of such information. If the information is not timely submitted and is necessary for reaching a certification decision, certification will be denied without prejudice or processing will be suspended *upon notification to the applicant* by [DHEC]. Any subsequent resubmittal will be considered a new application.

8A S.C. Code Ann. Regs. 61-101.C.4 (2012) (emphasis added). Under Regulation 61-101.C.4, the processing of an application for water quality certification is suspended only after the applicant has failed to meet the given deadline for submitting additional requested information and DHEC has notified the applicant about the suspension. Significantly, Regulation 61-101 does not authorize DHEC to suspend processing during the interval between the time it requests more information and the deadline that it gives the applicant when it makes the request.

On August 19, 2008, DHEC sent a letter to Duke requesting additional information about the draft Quality Assurance Program Plan that Duke submitted with its application. In the letter, DHEC instructed Duke to submit the information by October 19, 2008. DHEC sent two more letters requesting more information, one on October 8, 2008, with a deadline of November 8, 2008, and another on October 21, 2008, with a deadline of November 21, 2008. The ALC found that these requests were ineffective to suspend the processing of Duke's application. I agree with this finding. Even assuming the information that DHEC requested was both necessary to process Duke's application and not provided by the stated deadlines, DHEC never, as required by Regulation 61-101.C.4, provided Duke with a notice of suspension after any of the specified due dates. Moreover, as I have explained in the preceding paragraph, DHEC was not authorized under Regulation 61-101 to suspend its processing of Duke's application during the interval between the date of its request and the date by which Duke was to produce the required information.

The majority quotes Regulation 61-101.C.4 and does not appear to question its relevance to the processing of applications for water quality certification.

However, instead of applying the unambiguous provisions of this paragraph to determine when the processing of an application is suspended, it looks to Regulation 61-30, which provides in pertinent part:

> The time schedule shall be tolled when [DHEC] makes a written request for additional information and shall resume when [DHEC] receives the requested information from the applicant. If an applicant fails to respond to such a request within 180 days, [DHEC] will consider the application withdrawn and the application fee will be forfeited. [DHEC] shall notify the applicant no later than 10 days prior to expiration of the 180-day period.

4 S.C. Code Ann. Regs. 61-30.H.1.c (2011). The tolling provisions in this regulation are inconsistent with those in Regulation 61-101.C.4. Under Regulation 61-101.C.4, the processing of an application continues after DHEC requests additional information from an applicant. The processing is suspended only when the applicant misses the deadline to comply with the request *and* DHEC informs the applicant that a suspension is to take place. In contrast, under Regulation 61-30.H.1.c, the time schedule to process an application is tolled at the time DHEC makes a written request for more information and remains tolled until the applicant satisfies the request. Furthermore, Regulation 61-30.H.1.c does not require DHEC to impose any deadline on such a request. DHEC itself has acknowledged these two regulations are inconsistent with each other with regard to the method of determining whether it has acted timely on an application.

The ALC held that the issue of whether the processing of Duke's application had been suspended should be analyzed under Regulation 61-101.C.4 and DHEC could not invoke Regulation 61-30.H.1.c to support its claim that it issued a timely decision. I would affirm these holdings. First, although both regulations purport to address the issue of when DHEC can suspend processing of an application for water quality certification, Regulation 61-101 specifically covers water quality certification and was expressly promulgated to fulfill requirements of the Federal Clean Water Act. These requirements include prompt action by state agencies on requests for water quality certification, an objective important enough to warrant a legislative mandate in the Clean Water Act that unreasonable delay by a state agency in acting on such a request for water quality certification would be tantamount to a waiver by the State of its right to deny certification, which in turn would delay the applicant's pursuit of any federal license or permit for which state

water quality certification is a prerequisite.  *See South Carolina Coastal Conservation League v. South Carolina Dep't of Health & Envtl. Control*, 390 S.C. 418, 430, 702 S.E.2d 246, 253 (2010) (stating Regulation 61-101 "establishes procedures and policies for implementing water quality certification requirements of Section 401 of the Clean Water Act").  In contrast, Regulation 61-30, which is entitled "Environmental Protection Fees," covers permitting decisions for all environmental programs administered by DHEC pursuant to federal and state law and regulation.  Although Regulation 61-30 "establishes schedules for timely action on permit applications," the issue of timeliness is presented in the context of determining when an application fee is deemed to be forfeited by the applicant.  Nowhere does Regulation 61-30 reference the Clean Water Act.

DHEC has argued in its brief, that Regulation 61-30.H.1.c controls here because it was enacted later than Regulation 61-101.C.4 and has been amended as late as 2004.  Although its provisions apply to requests for water quality certification, Regulation 61-30, does not further the mandates of the Clean Water Act or the policy favoring prompt action by the states on requests for water quality certification.  Therefore, I would hold that the ALC correctly followed Regulation 61-101.C.4 in concluding that DHEC waived its right to deny certification to Duke.  *Cf. City of Rock Hill v. South Carolina Dep't of Health & Envt'l Control*, 302 S.C. 161, 167-68, 394 S.E.2d 327, 331 (1990) ("[T]he general rule is that statutes of a specific nature . . . are not to be considered as repealed in whole or in part by later general statutes . . . , unless there is a direct reference to the former statute or the intent of the legislature to repeal is explicitly implied therein.").

Furthermore, as Duke has noted, DHEC issued requests for information on October 8, 2008, and November 8, 2008, while it was awaiting information it requested on August 19, 2008.  DHEC's own actions, then, show it did not suspend the processing of Duke's application according to Regulation 61-30.H.1.c; rather, it continued to review it actively after it requested supplemental information.

I would further reject Appellants' arguments that the doctrines of estoppel and waiver preclude Duke from raising the issue of timeliness of DHEC's action on its application.  DHEC, as the party claiming estoppel, must prove not only reliance on Duke's conduct, but also that "lack of knowledge and of the means of [obtaining] knowledge of the truth as to the facts in question." *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 107 n.2, 531 S.E.2d 287, 292 n.2 (2000).  Here, DHEC cannot reasonably claim it lacked knowledge and the means of obtaining knowledge about its own regulations.

As to Appellants' contention that Duke could not raise the issue of timeliness during proceedings before the ALC because it did not raise this issue to the DHEC staff or board, I note the appealed order resulted from a contested case hearing, not a judicial review proceeding. The governing statute does not limit the parties to asserting only those issues that had been litigated before the administrative agency. *See* S.C. Code Ann. § 44-1-60(G) (Supp. 2012) (setting forth procedures for contested case proceedings).

For the foregoing reasons, I would hold that DHEC's processing of Duke's application for water quality certification was never suspended pursuant to Regulation 61-101.C.4. When DHEC issued its staff decision on May 15, 2009, it had already waived its right to act on the requirement for the state water quality certification that Duke would otherwise have been required to satisfy in order to obtain a FERC license to continue operating the Catawba-Wateree Hydroelectric Project. I would therefore affirm the ALC's decision.